## Miller *versus* McNeill.

A will was executed by the testator and attested by the subscribing witnesses, at the same time, and in the presence of each other, but the subscribing witnesses wrote their names first, and the will was then signed by the testator: *Held*, that this was a sufficient execution and attestation of the will.

The English statute of wills is more exacting in its requirements than ours; and therefore, the decisions under it are not of authority in construing our statute.

ERROR to the Common Pleas of *Montgomery county*.

This was an issue *devisavit vel non*, directed by the Register's Court, to try the validity of a certain writing purporting to be the last will of John Miller, deceased, wherein Elizabeth' McNeill, the principal legatee named in the said will, was plaintiff, and John Miller, the heir at law of the decedent, was defendant.

One of the subscribing witnesses was dead, but his signature was duly proved. The other subscribing witness testified, that before the testator signed the paper, the witnesses put their signatures to it, and the testator immediately afterwards signed it, and with his hand on the seal, acknowledged it, in the presence of both witnesses, to be his will. And the only question was, whether this was a sufficient execution.

Upon this point, the court below (SMYSER, P. J.) instructed the jury as follows:—"This is what is called an issue of *devisavit vel non*, directed to try the validity of a certain paper writing purporting to be the last will and testament of John Miller, deceased. A verdict for plaintiff establishes it as his will; a verdict for defendant sets it aside, and leaves his estate to go to his heirs at law, as in case of intestacy. The plaintiff is one of the principal devisees or legatees, and, of course, interested in establishing it; the defendant is the heir at law, and seeks to set it aside. The alleged will is impeached by him on two grounds: 1. That the testator had not testamentary capacity at the time he made it: and 2d. That it was procured to be made by fraud, and undue influence operating on a mind enfeebled by extreme old age and bodily infirmity. Either of these grounds, if sustained, is sufficient to invalidate it and set it aside.

"Before considering these points, there is a preliminary question to be settled, and that is the one presented by defendant's 1st and 2d points, which raise substantially the same question, and which are as follows:—

"1. That the only surviving subscribing witness having proved that the will was signed by both subscribing witnesses before it

[Miller *v.* McNeill.]

was signed by the testator, and there being the evidence of but one witness, that testator afterwards signed it at all, there is no legal proof of the execution of the will, and plaintiff cannot recover.

"2. That there is no legal proof of the execution of this will, and the verdict must be for the defendant.

"We cannot affirm these propositions, or either of them. On the contrary, we say that if the jury believe the testimony of Samuel Roeder, that, together with the proof of the death of Jacob Grafley, the other subscribing witness, and of his handwriting, does amount to legal proof of the execution of the paper in question, as his will, by the testator.

"It is true, that the law requires two witnesses to establish a will; and it is also true, that each must separately depose to every act necessary to constitute a valid and legal execution of the instrument, so that no part thereof shall stand on the testimony of one witness alone. That, we think, is the case here. Samuel Roeder testifies fully that, although, for some unexplained reason, the attesting witnesses subscribed their names before the testator signed his, yet that the latter afterwards, upon the same occasion, before them, in their presence, at the same interview or sitting, signed the will, and acknowledged and declared it to be his last will and testament; and he further testifies, that he was, at the time of so doing, of sound mind. This is sufficient legal proof of execution by him, as one of the subscribing witnesses. Remember, we are not now on the subject of the truth or correctness of his testimony; that is a question which we reserve in full force for your consideration, but is not involved in the point of law, now engaging our attention.

"Then as to the other witness, Grafley. It is in undisputed proof that he is dead, and that his signature to the will as a subscribing witness, is in his handwriting, and is his genuine signature. Now, under these circumstances, the law implies from the facts, that everything which the witness, if living, could swear to, belonging to a good and valid execution of the instrument, has been testified to by him. This presumption may be rebutted and contradicted by other testimony, just as his actual statement made on the stand, if living, could be. Suppose, then, that Jacob Grafley, instead of being now dead, were living, and had testified on the stand to the same fact which the law implies from his attestation and death; and suppose, that in some one of these material facts, he were contradicted by another witness, would it follow, from such conflict of proof, that the court could say the evidence in support of the instrument, is legally insufficient? Surely not; because then, its sufficiency or insufficiency would depend on which witness was correct or believed; and that is a

[Miller v. McNeill.]

question to be resolved by the jury alone, as in all cases of conflicting evidence, and not by the court. All the court can do is to see that there shall be two witnesses separately deposing to each material requisite of the execution of the instrument.

"Suppose, for instance, that Grafley had actually sworn (and for the purpose of this question, it is the same as if he had) that he was present, saw the testator sign, heard him acknowledge the paper as his will, and that in his presence, and at his request, he and the other subscribing witness had attested it as his will, and suppose some other witness would swear that on the day in question, he had seen Grafley at a place three hundred miles off. The court could not assume that the statement of the last-named witness was true, and that of the subscribing witness false, and on that ground, withdraw the case from the jury, and say to them that there was no legal proof before them, of the execution of the will. We could only say, that if Grafley was believed, the will is legally proven; if the other, it is not; but which is correct, which tells the truth? Here the fact is—these matters are to be decided by the jury, and not by the court.

"But the case is not even as strong as this, for Roeder does not contradict, but rather confirms the legal inference of due execution founded on the attestation of the deceased witness, for he says that immediately after they signed as witnesses, the testator, in their presence, affixed his signature, and acknowledged the paper signed to be his will. He says, furthermore, expressly, at the commencement of his re-examination in chief, that Grafley *was present* when the old man signed the will.

"Now, it is true, that if there was no other evidence of this, than what is found in Roeder's testimony, the case would not be made out as the law requires; but when the living witness swears positively to the fact, when we have the legal inference to the same effect from the attestation by the deceased witness, and when that inference, instead of being contradicted or rebutted by the testimony of the other, is directly sustained and confirmed thereby, I confess myself at a loss to see on what grounds we could withdraw this case from the jury, by telling them, as we are requested to do, that there is no legal proof of execution here."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff, the defendant removed the cause to this court, and here assigned the same for error. The following opinion was delivered in the court below, on a motion for a new trial:—

"The first reason filed in support of this motion, was, so far as it complains of the answer of the court to defendant's third point, abandoned on the argument. This reason is therefore left to stand on the answers to the first and second points; both of which,

[Miller *v.* McNeill.]

in substance, asked the court to instruct that the proof was *legally* insufficient to establish the will, and that the verdict of the jury should be for defendant. The ground of this prayer is, that every requisite to constitute a good and valid execution of the will, is not established by the testimony of at least two witnesses separately deposing to each.

"So far as this question is concerned, the testimony is this in substance: There are two attesting witnesses, Samuel Roeder and Jacob Grafley. The latter was dead before the trial, and his handwriting was proven. This, according to the decisions, was equivalent to the direct, express, full, and positive testimony of Grafley to every fact involved in a legal and valid execution. Roeder, the surviving witness, testified that the testator was, at the time of execution, of sound and disposing mind. That he saw him sign his name to the will; and declared it to be his last will and testament; that both he and Grafley subscribed it as witnesses, at his request, and in his presence; that, for some reason not explained, their signatures preceded in order of time, that of the testator; but that after all had subscribed the will, the testator, with his finger on his signature, solemnly acknowledged and declared it to be his will, before both the attesting witnesses.

"The defendant's counsel contends that inasmuch as in regard to the proof of the will by Grafley, the presumption that everything was rightly done rests on the fact of attestation by his signature, such presumption is repelled by the proof made by Roeder that when he attested it, the will was not actually executed; and, so far as the putative testator's subsequent acknowledgment of the will in their presence, or his actual signing of the will, is concerned, that that fact rests on the testimony of a single witness only, to wit, Mr. Roeder; and therefore, there is not proof of every requisite by two witnesses.

"The answer to all this seems to me to be plain and obvious. Roeder makes express proof of a sufficient execution, by the testimony of one witness, to wit, himself. The legal presumption, from proof of Grafley's handwriting, is to the same effect, so far as he is concerned, as the second witness. He is to be taken to have sworn to every fact necessary to a good and valid execution of the instrument. If, as to him, he is contradicted by his co-witness, that presents a conflict of proof, just as if Grafley were living, and, on the witness stand, had testified to all that the law implies on account of his death. Such conflict, then, as in all other cases of conflicting evidence, is for the jury to resolve; and the court cannot determine it as a matter of law. But, is there in fact, such a conflict of proof? I think not; for the same testimony and the same witness that furnishes the fact creating the supposed difficulty, also removes that difficulty, by showing

[Miller *v.* McNeill.]

an acknowledgment of the signature, as well as the fact of the subsequent signature itself, made and done in the presence of Grafley as well as of Roeder. The supposed bane carries with it its own antidote. The case, in a word, stands just thus :—There is legal presumptive proof, in the outset, in favour of the will ; a witness is called to destroy that presumption by proof of a fact supposed to have that effect ; but he, at the same time, proves another fact which is a perfect counterpoise to the one thus introduced. On what principle shall part of his statement, only, be received, and the other rejected ? Does not the fact proven by him, that the testator did sign and did acknowledge his signature, rather corroborate and sustain the legal inference ? How, then, could the court, with propriety, say to the jury that there was no legal proof of the execution of this will ?

" It is, at best, standing on very sharp points, to hold that where the testator and witnesses were assembled for the express purpose of executing and attesting the will, and it was all one transaction done at one sitting, in their mutual presence, the mere order of their signing should avoid or affect the attestation, although, in strict law, such may be the effect. As the proof actually stands, the case does not depend on this principle, as I conceive.

" We have been referred to cases to show that the want of signature, or a vicious or defective execution, will not be aided by a subsequent acknowledgment. But here, the proof is of execution as well as acknowledgment. Besides, the counsel himself admitted on the argument, that as to Roeder, the proof was sufficient. The truth is, the cases cited do not apply, because they were cases in which it was sought to make an acknowledgment, not of the signature, but of the instrument, take the place of such a signature as the Act of 1833 requires. Here, there was an actual signing, by a person who the jury have found, was *sui compos* at the time ; and it seems to me that, if we concede (what is by no means plain) that the prior signing by the deceased witness, was void as an act of attestation ; still, the only question is whether the testimony of Roeder is not as competent and sufficient to sustain as to impeach the legal conclusion deduced from the proof of Grafley's signature. Without his testimony, the legal conclusion would be perfect, and would prevail, for all purposes connected with the legal question raised by the first and second points presented by defendant on the trial. If the testimony given to rebut the presumption is so qualified or explained by the witness as to destroy its effect, I cannot see why the original conclusion the law draws, is not left in all its pristine force and efficacy. So believing, the first reason filed for a new trial, so far as it is yet before us, is overruled."

*G. R. Fox,* for the plaintiff in error.—At the time the witnesses

[Miller *v.* McNeill.]

signed the paper, there was no will in existence to attest. Until the testator affixed his signature to it, it was not his will. An attestation is a mere declaration of the witness that *he saw the instrument executed ;* and in the present case, this is shown to be untrue: Neely *v.* Neely, 5 *Harris* 231. Under the English statute of wills, this has been held to be an insufficient attestation : In the goods of Olding, 2 *Curteis* ; In the goods of Byrd, 3 *Id.* 117 ; Cooper *v.* Bochett, *Id.* 648. He also cited Hock *v.* Hock, 6 *S. & R.* 47 ; Dunlop *v.* Dunlop, 10 *Watts* 155 ; Cavett's Appeal, 8 *W. & S.* 26 ; Harden *v.* Hays, 9 *Barr* 151.

*Mulvany*, for the defendant in error.—The idea that when the witnesses signed, there was no will in existence, is derived from the decisions of Sir H. JENNER FUST, under the English statute of wills, 1 Vict. ch. 26, § 9, which requires the signature of the testator to be proved by the witnesses: 3 *Curteis* 253 : *Id.* 117 ; 1 *Williams on Executors* 77. This worked an essential change in the law, in respect to the execution of wills ; for the statute of frauds merely required that the witnesses should attest and subscribe the will : Ellis *v.* Smith, 1 *Ves. Jr.* 11 ; Trustees of British Museum *v.* White, 6 *Bing.* 310 ; Chaffee *v.* The Baptist Missionary Convention, 10 *Paige* 85. In Llott *v.* George, 3 *Curteis* 160, Sir H. JENNER FUST notes the difference between the statute of frauds and the present English statute of wills.

Under the English statute of frauds, it was immaterial whether the testator or the witnesses signed first: Peat *v.* Ougly, *Comyns* 197 ; 2 *Stark. Ev.* 919. Our act of 1833 was taken from the statute of frauds, and while it requires the will to be proved by two witnesses, it leaves the mode of proof unfettered : Loy *v.* Kennedy, 1 *W. & S.* 396 ; Logan *v.* Watt, 5 *S. & R.* 212. He also cited Swift *v.* Wiley, 1 *B. Monroe* 117 ; Vernon *v.* Kirk, 6 *Casey* 223 ; 1 *Williams on Executors* 83.

The opinion of the court was delivered by

WOODWARD, J.—A testator and the subscribing witnesses to his will were assembled around the same table at the same time ; all signed a will in the presence of each other, but the subscribing witnesses wrote their names before the testator wrote his. The plaintiff in error thinks this was an insufficient attestation, and some observations of Sir H. JENNER FUST, in 3 *Curteis R.* 117, 648, upon the requirements of the English statute, which is more exacting in its terms than ours, are relied on for upsetting this will.

Our statute contemplates, undoubtedly, a signature by the testator, and then a signing by witnesses in attestation of that signature, when witnesses subscribe at all ; but where a transaction

[Miller v. McNeill.]

consists of several parts, all of which occur at the same moment, and in the same presence, are we required to undo it because they did not occur in the orderly succession which the law contemplates? No language of our statute of wills imposes any such necessity upon us, and we would not decide anything so unreasonable, except under stress of very positive statutory language. The execution and attestation of the will were contemporaneous, or rather simultaneous, acts, and we will not regard the question, who held the pen first—the testator or his witnesses. The attestation was well proved by the surviving witness, and proof of the signature of the deceased witness raises the presumption that he attested duly : 9 *Barr* 156.

If more discussion of the point be desired, it will be found in the charge, and in the subsequent opinion of the learned judge of the court below.

The judgment is affirmed.