## Rees, Administrator of Jonas S. Towar, *versus* Stillé.

*Proper Authentication of Wills.—Sealed Verdict no part of Record.*

1. The proof of a will consists of evidence of its authentication in due form of law, and of its being the voluntary testamentary disposition of a sound mind. Whether it be duly authenticated, is a question of law for the court; whether it was the product of a sound mind, is exclusively for the jury.

2. The issue being as to the validity of a codicil, the paper itself would have been properly laid before the jury, without any proof of its execution, not as evidence, but to enable the jury to see what they were to try; admitting it in evidence was only deciding that there was sufficient preliminary proof to warrant a submission to the jury to find whether *the fact* was established that the testator affixed his signature.

3. Of three subscribing witnesses to a codicil, one proved unqualifiedly the signature and mental capacity of the testator; the second testified that the testator wrote his name, unassisted, except as to the last two letters (his hand being held or guided in forming them), but denied that at the time of such execution he was possessed of mental capacity: *Held*, that the fact of execution was sufficiently proved by two witnesses, and that it was therefore proper to submit the codicil to the jury, and that there was no duty incumbent on the plaintiff to call the third subscribing witness.

4. The due execution of the codicil being proved, the burden of disproving it, and showing that a paper, the contents of which were unknown to the testator, was imposed on him, rests on the defendant.

5. A sealed verdict is no part of the record, and does not become so by filing; the finding in open court being the only verdict that is admitted of record.

ERROR to the Court of Common Pleas of *Philadelphia county.*

This was a feigned issue to test the validity of the codicil to the will of Alexander Towar, at the instance of Jonas S. Towar (since deceased), who was one of the legatees of Alexander, and who had filed a *caveat* against the probate of the alleged codicil.

On the morning of March 16th 1857, Alexander Towar executed this codicil in the presence of three subscribing witnesses, Mr. Ewing, Mrs. Hogan, and Dr. Dubbs, by which he devised to Miss Martha Stillé, plaintiff below, to whom he was engaged to be married, such an interest in his estate as she would be entitled to, if he had been married to her and had died intestate. On the trial of the cause the plaintiff in the issue called Mr. Ewing, who testified unqualifiedly as to Mr. Towar's mental capacity at the time, and also as to the fact of execution. She then called Mrs. Hogan, who, having testified as to her own attestation, proceeded on cross-examination, *inter alia*, as follows: "Mr. Towar was quite exhausted. I went to get water; I returned; I thought he was dying; propped him up with pillows; placed spectacles on his nose; they fell off twice. When the codicil was brought to sign, I proposed to place a bed-chair behind him. He was unable to support himself at all. A pen was handed to him. He wrote as far as 'Tow'—the pen fell from his hand. I think Dr. Dubbs held his hand while he finished the last two letters. I am confident he did not see when he was signing the codicil. What he did was done mechanically. . . He was in a comatose, drooping, lethargic state. He had to be aroused always. He was unconscious when he signed the codicil—I have no doubt of it." The codicil being offered in evidence, it was objected to on the ground that the signature was not proven by two of the subscribing witnesses, and that the plaintiff was bound to call the third attesting witness. The court overruled the objection, and the will and codicil were read in evidence. Various other witnesses as to Mr. Towar's testamentary capacity were called upon both sides, and considerable testimony was received as to

[Rees, Administrator of Towar, *v.* Stillé.]

his *intentions* expressed the night before and at other times (it being alleged by the defendants that a clear mistake had occurred—that the testator had intended to give Miss Stillé only a life interest in one-third of his real estate, and an absolute interest in one-third of the personalty). By the will of Mr. Towar there was a clear conversion of all his real estate into personalty.

After the delivery of the charge by THOMPSON, J., the jury were instructed that they might bring in a sealed verdict in case they should agree before the following morning. When they were called in the morning, the foreman rose and stated that they found for the plaintiff. Afterward a sealed verdict was produced and filed, as follows: "We, the jurors whose names are hereunto subscribed, believing the intention of the testator in this case was to leave to Miss Stillé a life interest in his estate, therefore find a verdict for the plaintiff."

Judgment having been entered on this verdict, the defendant in the issue, Mr. Rees, the administrator of Jonas S. Towar, sued out this writ, and assigned for error the following matters, to wit:—

1. The court below erred in admitting in evidence the alleged codicil to the will of testator.

2. In admitting in evidence the alleged codicil, it not having been proved by two of the subscribing witnesses.

3. In affirming plaintiff's 2d point, viz.: "That, the due execution of the codicil having been proved, the onus of disproving it, and proving that a paper, the contents of which were unknown to testator, was imposed on him, lies on the defendant, and he must make out the absence of a sound mind by positive proof, and any evidence short of a positive derangement of the intellect, will not furnish a substantive objection to the validity of this codicil. Mere weakness of the mental powers, induced by disease, is not sufficient."

4. In affirming plaintiff's 3d point, viz.: "That there is no evidence before the jury of improper influence used in procuring this codicil. The attestation of a witness to a will is proof by the witness of the sanity of the testator. The law is, that no man would attest the will of any but a sane person, of sound disposing mind, memory, and understanding; when, therefore, a witness who has attested a decedent's will, subsequently testifies to his incompetency to make a will, although the jury are to decide whether he was competent or not, very little credit is to be attached to such testimony."

5. In affirming plaintiff's 6th point: "That, in weighing the opinions of witnesses who testify to his incompetency, the jury should bear in mind that such witnesses do not measure testamentary capacity by the same standard, or by any precise

[Rees, Administrator of Towar, v. Stillé.]

standard, and therefore such opinions should be tested by the acts or language of the decedent at the time the will was made, and the state of his mind before and after that time, may be considered by the jury to shed light upon his mental condition at the time of executing his testamentary purposes."

6. In affirming plaintiff's 7th point, viz.: "That, if the jury were of opinion that the testator had previously reflected and determined upon his purposes in favour of the plaintiff, and that when he executed those purposes by signing the codicil, although enfeebled by disease, he had an intelligent consciousness of the nature and effect of the act he was engaged in, and distinctly understood that it was in favour of the plaintiff, the plaintiff is entitled to a verdict."

7. In affirming the plaintiff's 8th point, viz.: "That, if the jury believe from the evidence that the testator gave directions to his counsel, from which he was able to draw the codicil, and that it was read and assented to by him; that he called for his own pen, and more light, and subsequently directed that it should be placed on record, these facts in the case are sufficient for the jury to find that the testator had an intelligent consciousness of the contents of the codicil, and the plaintiff is entitled to a verdict."

8. In affirming the plaintiff's 9th point, viz.: "That, if the jury are of opinion that Mr. Towar's mind had finished the work of reflection upon the contents of his codicil before he stated his intentions to Mr. McAllister, then, in giving directions, but little original reflection was necessary. His memory was mainly required to recall the results of his previous thought. And, if the jury are of opinion that his memory recalled, and his language stated his intentions intelligently, the plaintiff is entitled to recover."

9. The court erred in not affirming the defendant's point, viz.: "That, if the jury should render a verdict for Miss Stillé, the plaintiff, she would take under the codicil one-half of the testator's personal property, absolutely, and an interest for life in one-half of his real estate, and the interest she would take cannot be questioned after such a verdict in any proceedings whatever, upon the accounts of the executors."

10. The record shows two verdicts entered in the same case.

11. The verdict of the jury, viz., the sealed verdict, is repugnant and void, finding a fact both according to, and in opposition to the record.

12. The said sealed verdict is defective, imperfect, and uncertain, finding both for plaintiff and defendant, and finding a matter entirely out of the issue.

13. The judgment entered upon the general verdict is erroneous.

[Rees, Administrator of Towar, *v.* Stillé.]

14. The judgment entered of record is erroneous.

*W. A. Porter* and *A. Thompson,* for plaintiff in error, who was defendant below—As to first two assignments of error, cited Buckminster *v.* Perry, 4 Mass. 593; Brooks *v.* Barrett, 7 Pick. 94; Comstock *v.* Hadlyme, 8 Conn. 254; Slight *v.* Wilson, 1 Dall. 94; Rohrer *v.* Stehman, 1 Watts 463.    The testimony of Mrs. Hogan destroyed the presumption of sanity, and left proof of the codicil to stand solely on the testimony of Mr. Ewing. On the ninth assignment of error they cited Allison *v.* Wilson's Executors, 13 S. & R. 330; Morrow *v.* Brenizer, 2 Rawle 185; Reading *v.* Blackwell, 1 Bald. 166; Bleight *v.* Bank, 10 Barr 131; Nagle's Appeal, 1 Harris 260; Stover *v.* Zimmerman, 9 Harris 384; Parkinson's Appeal, 8 Casey 455; Wharton *v.* Shaw, 3 W. & S. 124; Burr *v.* Simm, 1 Wh. 252; Willing *v.* Peters, 7 Barr 287, to show that a conversion of the real estate was worked, and that thus the jury were under an erroneous impression with regard to the quantity of Miss Stillé's interest. On the assignments of error relating to the verdict, they cited McIntire *v.* Clark, 7 Wendell 330; Fairfax *v.* Fairfax, 5 Cranch 19; 1 Graham on New Trials 157, 132, 135; Gearish *v.* Train, 3 Pick. 124; Mackalley's Case, 9 Co. 69; Brown *v.* Henderson, 4 Munford 492; Patterson *v.* United States, 2 Wheaton 221.

*J. Murray Rush* and *W. F. Judson,* for defendant in error.— As to the alleged error in admitting the codicil in evidence: The judge was simply bound to determine whether that was testator's signature, not what was his mental capacity: Hays *v.* Harden, 6 Barr 449; Reynolds *v.* Reynolds, 16 S. & R. 86; Lewis *v.* Lewis, 6 S. & R. 489.    Circumstances may supply the want of one witness, when they go directly to the act of disposition: Miller *v.* Carothers, 6 S. & R. 215; Eyster *v.* Young, 3 Yeates 511; Jones *v.* Murphy, 8 W. & S. 295.    It is unnecessary to call all the subscribing witnesses: Talham *v.* Wright, 2 Russ. & Mylne 1; Goodlittle and Clayton, 4 Burr. 2225; Cowden *v.* Reynolds, 12 S. & R. 284; Mullen *v.* McKelvy, 5 Watts 399. On the eighth assignment of error, to show that the test of mental capacity there proposed was correct, they cited McMasters *v.* Blair, 5 Casey 303; Stevenson *v.* Stevenson, 9 Casey 469; Leech *v.* Leech, 9 Harris 67; Rambler *v.* Tryon, 7 S. & R. 92; Dornick *v.* Reichenbach, 10 S. & R. 92; Boyd *v.* Eby, 8 Watts 66; Stryker *v.* Groves, 5 Whart. 386; Dunlop *v.* Dunlop, 10 Watts 154; Aurand *v.* Wilt, 9 Barr 53; Irish *v.* Smith, 8 S. & R. 581; McTaggert *v.* Thompson, 2 Harris 154.    The defendant's point to the court below had no connection whatever with the question before the jury: Iddings *v.* Iddings, 7 S. & R. 113.    As to the alleged error in the verdict and judgment thereon: Graham on

New Trials, vol. 1, pp. 136, 159; Richmond *v.* Tallmadge, 16 Johns. 312; Lincoln *v.* Hapgood, 11 Mass. 358; Bacon *v.* Callender, 6 Mass. 304; Dyer 372; Cro. Eliz. 480; Hawks *v.* Crofton, 2 Burr. 699; Dornick *v.* Reichenbach, 10 S. & R. 85, 90; Cavene *v.* McMichael, 8 S. & R. 443; 1 P. C. C. R. 72; Fisher *v.* Kean, 1 Watts 260; Freedly *v.* Scheetz, 9 S. & R. 157.

The opinion of the court was delivered, January 28th 1861, by STRONG, J.—The proof of a will consists of evidence of its authentication in due form of law, and of its being the voluntary testamentary disposition of a sound mind. Whether it be duly authenticated, is a question of law for the court; whether it was the product of a sound mind is exclusively for the jury. The question of authentication, however, is complex. There may be controversy respecting the existence of proof of the facts which constitute it, or respecting their sufficiency when proved. If the facts be denied, the jury, in an issue *devisavit vel non*, are to pass upon them, and the court only determines whether, if proved, they make up authentication. But proof of the facts necessary to constitute authentication is not to be confounded with proof of mental soundness, or freedom of the will. The only fact in this case bearing on the question of authentication, which was in dispute, was whether Mr. Towar actually signed the codicil, and the first two assignments of error rest upon the assertion that there was not sufficient proof of his having signed it, to warrant the admission of the codicil in evidence. The issue on trial being whether the writing was valid as a codicil, it of course would have been properly laid before the jury without any proof of its execution, not as evidence, for it could not prove its own execution or validity, but to enable the jury to see what they were to try: Cowden *v.* Reynolds, 12 S. & R. 281; Shelley *v.* Diller, 1 Rawle 177. Admitting it in evidence was only deciding that there was sufficient preliminary proof to warrant a submission to the jury to find whether *the fact* was established that Mr. Towar had affixed his signature to it. That this fact was sufficiently established for such submission, we have no doubt. There were three subscribing witnesses to the paper. The first called proved unqualifiedly the signature of Mr. Towar, and his own attestation. The second (Mrs. Hogan) proved that she attested the codicil as a subscribing witness.

On her cross-examination she described the manner in which the alleged testator's signature was made. Her testimony was that he wrote "Alex. Tow," when the pen fell from his hand; that Dr. Dubbs replaced it and held his hand while he (Towar) finished the last two letters. And again, she testified, "He wrote the words Alex. Tow without spectacles, I think. I think they fell off the first when he was as far as 'Alex.' They were

[Rees, Administrator of Towar, *v.* Stillé.]

put on and he wrote 'Tow,' and his hand was guided in completing the signature. Dr. Dubbs put his hand on Mr. Towar's and kept it there until the signature was finished." That this was proof by the second witness of the fact of signature, is beyond question. He wrote all his name, unassisted, except the last two letters. His hand was guided, or held, while he wrote the last two. That a part of the name was written with the aid of another person's holding the hand or guiding the pen does not make the signature any the less that of the alleged testator. This has many times been decided: 1 Har. & John. 480; 4 Wash. C. C. R. 262; 3 Ad. & El. 658; 17 Pick. 373; 1 Met. 352; 3 Curt. Ecc. Reps. 752; 12 Harris 502, Flannery's Will. Why then was not the fact of execution proved, at least sufficiently to justify the court in submitting it to the jury? Because, says the plaintiff in error, the same witness testified that Mr. Towar was unconscious when he made the signature. But was the court to disregard the proof of the fact of signature, because the witness denied the existence of mental capacity? That was an entirely different matter, a matter exclusively for the jury, in regard to which the testimony was contradictory. Mrs. Hogan had already asserted the sufficient capacity of the testator by attesting the will as a subscribing witness, and many of the facts detailed by her during her cross-examination were inconsistent with the opinion she expressed that Mr. Towar was unconscious when he wrote his name. Had, therefore, the court withheld the codicil from the jury, notwithstanding the proof given of the fact of signature, they would not only have undertaken to pass upon the competency of the testator, which the jury alone could do, but they would have decided as matter of law, that he was incompetent, in the face of the attestation to the contrary by Mrs. Hogan, the direct testimony of the other subscribing witness examined, the detailed facts indicatory of conscious intelligence, and the legal presumption always existing in favour of mental competency, until a deranged or idiotic state of the intellect has been shown. Such a decision it was not for the court to make. The codicil was, therefore, properly admitted in evidence. And there was no duty incumbent upon the plaintiff to call the third subscribing witness. The fact of execution was sufficiently proved by two, and more was not needed. It may be added that Dr. Dubbs, the third witness, when afterwards called, distinctly proved that the codicil was *in fact* signed by the testator.

Of the several specifications made to the charge of the court, but two were pressed in the argument. The others, though not abandoned, were justly considered without merit. It was urged, however, that the court erred in their answer to the defendant in error's second point. That point was as follows: " The due ex-

ecution of the codicil having been proved, the *onus* of disproving it and proving that a paper, the contents of which were unknown to the testator, was imposed upon him, lies on the defendant; and he must make out the absence of a sound mind by positive proof, and any evidence short of a positive derangement of the intellect will not furnish a substantive objection to the validity of this will." Only a portion of this proposition was affirmed unqualifiedly. The learned judge assented to the former part, namely, "that the due execution of the codicil having been proved, the burden of disproving it, and proving that a paper, the contents of which were unknown to the testator, was imposed on him, lies on the defendant." The plaintiff in error insists that this was binding instruction that the codicil had been duly executed. Such is not a fair construction of the language of the point, or the charge of the court. Both were aimed at an enunciation of what the law would be, if the due execution of the paper was proved. The court was called upon to say where the burden of proof would lie, after the forms of law had been complied with, and they so understood the call. This is clearly indicated by the entire answer to the point, and by what was said in another part of the charge. Thus the learned judge, in speaking of the signature, remarked, " the act is sufficiently established to make the codicil a legal instrument, provided you (the jury) think that, at the time, he had mind enough about him to do that act," that is, to sign. And again he said, "it is for you to consider and come to the conclusion, whether, at the time Mr. Towar put his name to the codicil, he was competent to do the act." What act did the judge mean? The question admits of but one answer, which is, the act of executing his will—so the jury must have understood him. There is no ground, therefore, for the complaint that the court took away from the jury the question of fact whether the codicil was duly executed by the alleged testator's signature.

The other exceptions to the charge relate to what was said respecting the measure of capacity necessary to constitute a sound disposing mind. We discover no error in the instructions given. We will not enter into the metaphysics of the argument against the court's answer to the ninth point of the plaintiff below. As addressed to the common understanding, its plain meaning was, that if the testator had reflected sufficiently upon the dispositions that he intended to make, before he stated them to the scrivener, it was not necessary that he should again go over the whole ground of his former reflection. That to state the purposes which were the results of reflection, required not consideration so much as memory, and that if the testator's memory recalled, and if he understandingly stated to the scrivener those intentions which were the results of his previous reflection—in-

2 WR.—10

tentions formed when his soundness of mind was undoubted—it was sufficient. In all this there was no error.

We approve of the refusal of the court to affirm the point presented by the defendant below. It was foreign to the issue, and had no connection with the matter to be tried.

The remaining assignments of error have reference to the verdict. They assume, against the record, that there were two verdicts, and they aver that one of them was repugnant and uncertain. The assumption is unwarranted. There was but one verdict, a general one for the plaintiff. The sealed paper filed was not a verdict, nor did it become, by filing, any part of the record : Dornick *v.* Reichenbach, 10 S. & R. 84. There is nothing, therefore, in these assignments.

The judgment is affirmed.