Brantlinger Will.

Argued March 18, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*John S. Simpson,* with him *Fisher, Ruddock & Simpson,* for appellant.

*R. Carlyle Fee,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 25, 1965:

This controversy comes to us on appeal from a decree of the Orphans' Court of Indiana County directing the admission to probate of an instrument dated December 13, 1962, as the will of Nan Brantlinger, deceased.[1] Appellant is the granddaughter and sole heir at law of decedent, as well as a substantial beneficiary under the contested will.[2]

When the will was executed, Mrs. Brantlinger was 81 years old and obviously showed her advanced age. Approximately a year and a half prior to signing her will, testatrix was hospitalized for treatment of a painful bursitis condition. Apparently Mrs. Brantlinger found her hospital confinement as distressing as her physical ailment and evidenced her displeasure by unco-operative and disruptive conduct.

In October of 1961, testatrix was taken from the hospital by her brother (proponent of the will) and

---

[1] Following Mrs. Brantlinger's death on June 30, 1964, appellant filed a caveat to the will offered for probate before the Register of Wills of Indiana County. By agreement of both parties, the record was certified to the Orphans' Court of Indiana County.

[2] Under the provisions of the will, the proponent of the will, decedent's brother, received 220 shares of American Telephone & Telegraph stock with a market value of approximately $14,700. Proponent's wife received a cash bequest of $5,000. Appellant received the contents of a savings account as well as the residue of the estate, a total gift to appellant in excess of $17,000.

his wife[3] and placed in the home of Mrs. Morallo Berry, a practical nurse, who took care of Mrs. Brantlinger until her death in 1964.

In late Fall of 1962, Mrs. Berry contacted Joseph N. Mack, Esquire, an attorney of her acquaintance, and requested that he come to her home to prepare a will for Mrs. Brantlinger.[4] After ascertaining Mrs. Brantlinger's age and the reason for her confinement in Mrs. Berry's home, Mr. Mack agreed to come but suggested that decedent be examined by a doctor prior to his visit.

On December 13, 1962, a day after decedent had been examined by a doctor and found by him to be competent, Mr. Mack went to the Berry home.[5] Upon his arrival he was presented with some notes containing Mrs. Brantlinger's wishes for the disposition of her property.[6] Mr. Mack carefully went over these notes with Mrs. Brantlinger, ascertaining the nature of her property and the identity of her intended beneficiaries, and suggesting contingencies which he felt should be considered and provided for in the will.

After Mr. Mack concluded his conference with testatrix and prepared the will, the instrument was signed by Mrs. Brantlinger and attested to by Mr. Mack, Ruth O. Berry and Margaret I. Bowen, the latter two being residents in the Berry home.[7]

---

[3] Although there was some question raised in the testimony over the circumstances surrounding testatrix's departure from the hospital, we agree with the court below that the incident is of little significance in resolving the issues presented in this case.

[4] Mrs. Berry acted at the request of testatrix's sister-in-law, wife of the proponent of the will.

[5] Attorney Mack was not informed of the doctor's findings, however, until after the will had been prepared and executed.

[6] Decedent's sister-in-law testified that she prepared the notes at Mrs. Brantlinger's direction.

[7] The attestation clause was worded: "Signed, sealed, published and declared by the above named Nan Brantlinger as and for my

Although it was conceded that testatrix executed the will by affixing her signature to the instrument, Miss Berry and Miss Bowen refused to sign the affidavit of probate, stating that at the time Mrs. Brantlinger signed the will, she was senile, did not fully understand and was not, in their opinion, competent. For this reason, appellant maintains that the proponent of the will failed to "prove" the will by the statutorily required two witnesses.

The so-called "two witness rule" is manifested in Section 4(a) of the Wills Act[8] which provides: "General Rule. . . . no will shall be valid unless proved by the oaths or affirmations of two competent witnesses."

In addition, the Register of Wills Act[9] directs: "All wills shall be proved by the oaths or affirmations of two competent witnesses, and . . . in the case of a will to which the testator signed his name, proof by subscribing witnesses, if there are such, shall be preferred to the extent that they are readily available, and proof of the signature of the testator shall be preferred to proof of the signature of a subscribing witness."

Citing cases which deal with proof of the *execution* of the will,[10] appellant contends that a will is not proved unless the two attesting witnesses to the exe-

---

last Will and Testament, in the presence of us, who have hereunto subscribed our names at her request as witnesses thereto in the presence of said testatrix and of each other."

[8] Act of April 24, 1947, P. L. 89, §4(a), as amended, Act of February 17, 1956, P. L. (1955) 1070, §1, 20 P.S. §180.4 (Supp. 1964).

[9] Act of June 28, 1951, P. L. 368, §302, 20 P.S. §1840.302.

[10] Appellant relies upon the statement of the "two witness rule" contained in *Hock v. Hock*, 6 S. & R. 47 (Pa. 1820), where Justice GIBSON stated: "Proof of *execution* must be made by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one." (Emphasis ours.) 6 S. & R. at 47.

cution of the will *also* attest to testator's mental capacity. Because two attesting witnesses refused to attest to testatrix's mental capacity, appellant argues that the proponent of the will has failed to satisfy the "two witness rule", that further investigation into decedent's mental capacity at the time she signed her will is therefore precluded, and that the will, being unproved, must be denied probate. Considered in the light of the statutory law and subjected to the scrutiny of reasoned analysis, however, such an interpretation of the "two witness rule" cannot prevail.

Reduced to its most basic premise, appellant's argument must stand or fall on the determination of whether, in addition to proof of testator's execution of the will by two competent witnesses, "proof" of a will must also include certification, either express or implied, by those same two witnesses, of testator's mental capacity at the time the will was executed. If that is a required element of such proof, then appellant's position is well taken. On the other hand, if it is not essential that the attesting witnesses make an affirmative representation of testamentary capacity in order to establish prima facie "proof" of a will, then it cannot be said that simply because they make a negative representation at probate the will must, ipso facto, fall.

We think it clear that *proof* of a will does not require any representation of testamentary capacity from the attesting witnesses.[11] Appellant makes the mistake of equating the *proof* of a will with the *probate* of a

---

[11] Although at probate the witnesses to the will are frequently requested to attest to testator's mental capacity, such a procedure is not required. In *Thompson v. Kyner*, 65 Pa. 368 (1870), the Court observed: "Testamentary capacity is always presumed to exist until the contrary is established. . . . It is true, the witnesses to a will when produced for probate, are asked whether they regarded the testator of sound and disposing mind and memory, but this is form merely, for in case of death, absence or incapacity

will but the two are not always the same. Generally, it is true that once the execution of the will is proved by the necessary two witnesses, a presumption of testamentary capacity arises and, in the absence of a contest, the will is admitted to probate. In those instances, therefore, proof of the will also meets the requirements for probate. But that is not the situation here. In this case the execution of the will has been *proved,* yet its *probate* has been subjected to challenge. Appellant's contentions go not to *proof* of the will but to its validity for purposes of *probate.*[12] To sustain her position on that score, however, appellant must overcome, by clear, strong, and compelling evidence, *Gold Will,* 408 Pa. 41, 51, 182 A. 2d 707, 712 (1962) ; *Masciantonio Will,* 392 Pa. 362, 379, 141 A. 2d 362, 370 (1958), the presumption of testamentary capacity which arose when the execution of the will was proved by the required two witnesses. Far from being a new rule, this principle has been stated in the decisions of this Court for over a century. See, e.g., *Kerr v. O'Donovan,* 389 Pa. 614, 634, 134 A. 2d 213, 222 (1957) ; *King Will,* 369 Pa. 523, 87 A. 2d 469 (1952) ; *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139 (1947) and cases cited therein at 81-82, 53 A. 2d at 142; *Rees v. Stillé,* 38 Pa. 138 (1861).[13]

---

of the witnesses to testify, proof of their handwriting satisfies the requirement of proof of execution." 65 Pa. at 377-78.

[12] Proving a will simply involves the establishment of the fact that an instrument was executed by which the testator attempted to make a testamentary disposition of his property. Once the fact of execution is proved by the required two witnesses, however, the requirements of Section 1(a) of the Wills Act (Act of April 24, 1947, P. L. 89, §1(a), 20 P.S. §180.1(a)) must be met before the will can be admitted to probate: "Any person of sound mind twenty-one years of age or older may by will dispose of all his real and personal estate subject to payment of debts and charges."

[13] Although the precise issue which we face here is not reached in most cases since the attesting witnesses usually vouch for testator's capacity, that factual distinction does not change the rule.

The issue was faced many years ago in *Rees v. Stillé,* 38 Pa. 138 (1861), a case which involved the validity of a codicil to a will. One attesting witness testified to the fact of execution and also to the testator's mental capacity. The second witness testified to the execution of the codicil but stated that the testator was unconscious at the time. Against the contention that the will was not proved by the two subscribing witnesses and that the third subscribing witness should have been called, the trial court held that the execution of the codicil was proved by two witnesses and that the question of testamentary capacity was then for the jury to determine. This Court affirmed, saying: "But proof of the facts necessary to constitute authentication is not to be confounded with proof of mental soundness, or freedom of the will." 38 Pa. at 143. The Court further observed: "Why then was not the fact of execution proved, at least sufficiently to justify the court in submitting it to the jury? Because, says the plaintiff in error, the same witness testified that Mr. Towar was unconscious when he made the signature. But was the court to disregard the proof of the fact of signature, because the witness denied the existence of mental capacity? That was an entirely different matter, a matter exclusively for the jury, in regard to which the testimony was contradictory." 38 Pa. at 144.

The purpose of the "two witness rule" is to establish that the testator actually executed the will, thereby insuring against the disposition of his property by means of a forged instrument introduced under circumstances in which decedent is unable to protect his own interests. As we have noted, once the execution of the will is proved, the mental capacity of a testator is presumed. This presumption arises from proof of testator's signature and not from any express or implied verification of testator's mental capacity by the attesting witnesses. Cf. *Farmer Will,* 385 Pa. 486, 488,

123 A. 2d 630, 632 (1956); *McNitt's Estate*, 229 Pa. 71, 73, 78 Atl. 32, 33 (1910); *Thompson v. Kyner*, 65 Pa. 368, 378 (1870).

Our conclusion is compelled by the pertinent statutory provisions and the decisions of this Court. The Register of Wills Act[14] makes it patently clear that the "proving" of a will is simply the process by which the authenticity of testator's signature is established. The Act provides that if the subscribing witnesses are not readily available, then, with a will signed by testator, proof of testator's signature is to be preferred to proof of the signature of the subscribing witnesses. However, if proof of a will required, as appellant must contend, an express or implied affirmation of testator's mental capacity by the subscribing witnesses, then surely proof of the signature of the testator alone could never be sufficient to prove a will.

That proof of a will does not rest upon the attestation of the subscribing witnesses as to testator's mental capacity is further supported by our cases. We have held that when dealing with a will signed by testator, it is not necessary that there be subscribing witnesses if testator's signature can be proved by two witnesses at probate. *Revercomb's Estate*, 315 Pa. 424, 172 Atl. 850 (1934). Necessarily, such proof does not contemplate an attestation as to testator's mental capacity but only proof of the fact that the signature affixed to the testamentary instrument is that of the testator. Such proof verifies the will as one signed by the testator and, at least prima facie, establishes a will.

We have held also that it is not required that a subscribing witness to a will know that it is a will to which he subscribed. *Lillibridge's Estate*, 221 Pa. 5, 69 Atl. 1121 (1908). If, when the testator dies, nei-

---

[14] Note 9 supra.

ther of the subscribing witnesses are available, then verification of their signatures alone will prove the will.[15] Since, when they subscribed they did not realize that it was a will to which they affixed their signatures, it is obvious that they were not attesting to testamentary capacity and, therefore, no such inference may be drawn from their signatures alone. Consequently, it follows that a subscribing witness need only testify to the execution of the will to "prove" it.[16]

Not only would the rule for which appellant contends be contrary to our statutes and cases, its adoption would violate the dictates of reason and the policy of the Wills Act by creating an effective, practical device for rejecting testator's expressed desires where such ground for rejection did not previously exist. Instead of protecting testator, such a rule would place in the hands of a single subscribing individual the power to invalidate, either by fraud, mistake, or otherwise, the testamentary disposition of a decedent's property. It would be difficult indeed for a testator to make certain at the execution of his will that his testamentary wishes would be followed subsequent to his death.[17] Instead, he would have to rely upon the con-

[15] See *Miller v. McNeill*, 35 Pa. 217 (1860); *Transue v. Brown*, 31 Pa. 92 (1857). This, of course, assumes that the signature of the testator cannot be proved but that those of the subscribing witnesses can. See Act of June 28, 1951, P. L. 638, §302(1), 20 P.S. §1840.302(1).

[16] Of course, the testimony of an attesting witness with regard to testator's competency is admissible as an exception to the rule which prohibits opinion evidence. 7 Wigmore, Evidence §1936 (3d ed. 1940). However, particularly because of the weakness inherent in such testimony, that exception should not be extended to the point where the opinion assumes a binding and conclusive effect on the validity of the will. Cf. *Masciantonio Will*, 392 Pa. 362, 383-84, 141 A. 2d 362, 372-73 (1958).

[17] The only way a testator could avoid the uncertainties which would result from such a rule would be to forego obtaining any witnesses to the will. That, of course, would create other uncer-

tinuing good faith and judgment of both subscribing witnesses to the will. Thus, the proof of his will and its prima facie validity would become, in a very real sense, altogether too dependent on the future attitude and conduct of a single subscribing witness. We will neither surround the making of a will with an atmosphere of such uncertainty nor attribute such intention to the Legislature.

Even if the "two witness rule" does not invalidate the will in the instant situation, appellant maintains that the burden was upon appellee to prove testamentary capacity which he did not meet by the evidence presented. Appellant concedes that once a will is admitted to probate, the burden shifts to the party contesting the will to show that it is not valid due to testator's lack of testamentary capacity. However, appellant maintains that, in the instant case, the will was not admitted to probate and, as a result, proponent went into the orphans' court with an unproved will. Since, prior to being proved, the burden rests with the proponent, appellant contends that that burden never shifted.

This contention is based upon appellant's mistaken conception of what is involved in establishing prima facie proof of a will. As we have said, such a procedure does not necessarily decide the issue of testamentary capacity. Here, by proving testatrix's signature, appellee did all that was incumbent upon him to establish prima facie proof of the will. At that point, the presumption of testamentary capacity arose and the burden shifted to contestant to overcome that presumption by clear, strong, and compelling evidence. *Gold Will,* 408 Pa. 41, 51, 182 A. 2d 707, 712 (1962); *Masciantonio Will,* 392 Pa. 362, 379, 141 A. 2d 362, 370 (1958).

---

tainties, a consequence the undesirableness of which cannot be denied.

However, appellant seeks to impose upon this general rule an exception that the burden remains with the proponent of the will where " 'it appears that the testator for some time prior to its execution has been mentally incapable of transacting business.' " See *Hall Will*, 402 Pa. 212, 220, 166 A. 2d 644, 648 (1961); *Cressman Estate*, 346 Pa. 400, 404, 31 A. 2d 109, 111 (1943).

Although we need not now discuss the appropriateness of the application in the *Hall* case of this asserted exception, we do say that it is neither applicable nor justified under the circumstances of the instant case.[18]

On appeal from the findings of a hearing judge, it is not our task to try the case anew but merely to ascertain if the decision reached can be supported by the evidence presented. Only if the record discloses that the hearing judge abused his discretion in his assessment of the weight of the credible evidence or committed an error of law will we reverse his action. *Lanning Will*, 414 Pa. 313, 200 A. 2d 392 (1964); *Masciantonio Will*, 392 Pa. 362, 141 A. 2d 362 (1958); *Williams v. McCarroll*, 374 Pa. 281, 97 A. 2d 14 (1953). A careful review of the record in this case fails to disclose any such abuse or error.

The test for testamentary capacity, as we have so often noted, is whether a man has an intelligent knowledge regarding the natural objects of his bounty, the general composition of his estate, and what he desires done with it, even though his memory may have been impaired by age or disease. See *Hunter Will*, 416 Pa. 127, 134-35, 205 A. 2d 97, 102 (1964); *Sommerville Will*, 406 Pa. 207, 217, 177 A. 2d 496, 501 (1962); *Williams v. McCarroll*, 374 Pa. 281, 97 A. 2d 14 (1953).

The court below placed much weight upon the testimony given by Mr. Mack, a reputable attorney and

---

[18] The dubiousness of the exception urged upon us is indicated by the strength of the three-judge dissenting opinion in *Hall*.

the scrivener of the will. He testified that Mrs. Brant-linger was competent. He talked with her about the terms of her will and she responded intelligently, evidencing a general knowledge of her property and an awareness of the identity of the objects of her bounty who, in this case, were her relatives. In this regard, it is significant that the provisions of the will[19] manifest a completely natural disposition of testatrix's property. See *Thompson Will*, 387 Pa. 82, 126 A. 2d 740 (1956); *Williams v. McCarroll*, 374 Pa. 281, 97 A. 2d 14 (1953).

We also note, as did the court below, that decedent's affairs were handled by an attorney and then by decedent's sister-in-law. We have held, however, that testamentary capacity need not rise to the level required to conduct business affairs. *Higbee Will*, 365 Pa. 381, 75 A. 2d 599 (1950); *Sturgeon Will*, 357 Pa. 75, 53 A. 2d 139 (1947).[20]

To support the alleged incompetence, appellant cites the testimony of Mrs. Brantlinger's physician who testified that she was not competent at the time she made her will. However, the doctor had not seen his patient since the time she left the hospital, a period of over a year prior to the time she executed her will. Because of this circumstance, the testimony is entitled to little weight. See *Masciantonio Will*, 392 Pa. 362, 384, 141 A. 2d 362, 373 (1958), and cases cited therein. We are concerned with testatrix's mental capabilities at the time she executed the will, see *Lanning Will*, 414 Pa. 313, 200 A. 2d 392 (1964); *Gold Will*, 408 Pa. 41, 182 A. 2d 707 (1962), and testimony of her condition close to that time must be considered more sig-

---

[19] See note 2 supra.

[20] We have also held that an adjudication of weakmindedness or incompetency or of insanity does not by itself prove lack of testamentary capacity. *Higbee Will*, 365 Pa. 381, 75 A. 2d 599 (1950).

nificant. In this regard, the doctor who treated Mrs. Brantlinger during her stay at the Berry home and who examined decedent five times during a period immediately preceding and following the execution of the will (one of those examinations taking place the day before the will was signed) testified that he found her to be competent.

Appellant also presented the testimony of Miss Berry, Miss Bowen and Mrs. Berry. With regard to the latter, although at the hearing she denied testatrix's competency, it must be recalled that she was instrumental in having Mr. Mack prepare the will and never gave him cause to believe that she thought Mrs. Brantlinger incompetent. As to Miss Berry and Miss Bowen, neither indicated to Mr. Mack at the time the will was executed or at the time they signed the attestation clause that testatrix was not competent. Although the Berrys and Miss Bowen testified that testatrix was frequently confused, sloppy, and forgetful, and that she had habits which, as the court below noted, were "outrageous", this is not sufficient to establish testamentary incompetency. See *Conway Will*, 366 Pa. 641, 79 A. 2d 208 (1951); *Higbee Will*, 365 Pa. 381, 75 A. 2d 599 (1950); *Ash Will*, 351 Pa. 317, 41 A. 2d 620 (1945); *Aggas v. Munnell*, 302 Pa. 78, 152 Atl. 840 (1930).

It would serve no purpose to further detail and discuss the testimony. We have carefully reviewed the entire record and find it free from legal error, abuse of discretion, or capricious disbelief of competent or credible evidence.

Lastly, appellant maintains that the will is invalid because it was the product of undue influence imposed upon testatrix by proponent and his wife. Appellant argues that the burden shifted to proponent to prove an absence of undue influence for the reason that a weakened mentality and confidential relationship were

proved. See *Kerr v. O'Donovan,* 389 Pa. 614, 134 A. 2d 213 (1957); *Quein Will,* 361 Pa. 133, 62 A. 2d 909 (1949).

In *Kerr v. O'Donovan,* supra, at 624-25, 134 A. 2d at 218, we pointed out situations which do not constitute a confidential relationship: "The fact that proponent performed business services for decedent does not establish a confidential relationship: Wetzel v. Edwards, 340 Pa. 121, 124, 16 A. 2d 441. In Llewellyn's Estate, 296 Pa. 74, 145 A. 810, the fact that the proponent drew checks, paid bills and lived in the same room with decedent to take care of him did not prove a confidential relationship. In King Will, 369 Pa. 523, 528, 87 A. 2d 469, the court found no confidential relationship between a testatrix and her niece who lived together, even though the niece wrote checks for her aunt, possessed a power of attorney for her safe deposit box and contacted the lawyer who wrote the will."

It is clear to us, as it was to the court below, that appellant failed to establish the existence of a confidential relationship which, coupled with weakened mentality,[21] would have shifted the burden to proponent to prove that testatrix's will was not procured by the imposition of undue influence upon her.

Thus, with the burden upon appellant to show undue influence, she must prove by clear and convincing evidence, that there was imprisonment of the body or mind, frauds or threats or misrepresentation, or circumstances of inordinate flattery, or physical or moral coercion to such a degree as to prejudice the mind of the testator or destroy his free agency, or to operate as

---

[21] In view of our finding that appellant did not establish a confidential relationship, we need not decide whether there was sufficient evidence in the record to warrant a finding of mental weakness for the purpose of shifting the burden to proponent to disprove undue influence.

a present restraint upon him in the making of the will. *Quein Will,* 361 Pa. 133, 145, 62 A. 2d 909, 915 (1949). Accord, *Paul Will,* 407 Pa. 30, 36, 180 A. 2d 254, 257 (1962). We agree with the court below that appellant presented no clear and convincing evidence of undue influence which would be sufficient to void the will.

The record fails to reveal or establish any basis in law or in fact for disturbing the decree of the court below.

Decree affirmed. Costs to be shared equally by the parties.