552 A.2d 1121

**In re ESTATE OF James Robert ANGIER, Deceased.**

**Appeal of Kathy Angier ANGEL.**

Superior Court of Pennsylvania.

Argued Oct. 14, 1988.

Filed Jan. 17, 1989.

Peter G. Loftus, Scranton, for appellant.

Raymond C. Davis, Susquehanna, for appellee.

Before ROWLEY, WIEAND and BECK, JJ.

WIEAND, Judge:

James Robert Angier died testate on July 13, 1985. A will dated January 14, 1982, and a codicil dated October 1, 1982, were admitted to probate by the Register of Wills of Susquehanna County. By the terms of the will, the testator left his entire estate to his daughter, Michelle, but if she predeceased the testator, the estate was then to go to Kathy Angier Angel, another daughter.[1] On or about September 23, 1982, Michelle was killed by a person or persons unknown. On October 1, 1982, the testator executed a codicil which left his entire estate to a friend, Steven William Martel.[2] The testator's only living child, Kathy, filed an appeal from the probate of the codicil. She argued (1) that the testator's signature on the codicil had been forged; (2) that the testator had lacked testamentary capacity when he signed the codicil; and (3) that his signature, if genuine, had been the product of undue influence, fraud, or mistake. The orphans' court, after hearing, dismissed the appeal and affirmed the Register's decision to admit the testator's will and codicil to probate. Exceptions were dismissed, and this appeal by Kathy Angier Angel followed.

For thirty years prior to his death, the testator served as Postmaster in the town of Lanesboro, Susquehanna County. Steven William Martel lived in an apartment above the post office. The testator had sustained serious back and neck injuries during World War II, and thereafter suffered chronic physical ailments. Prior to his death, he had lived alone with his dog. Martel frequently had helped the testator by caring for testator's dog, and sometimes joined

1. The testator was a divorcee. A third child, Mark, had died in 1969.
2. The evidence showed, however, that the testator's daughter, Kathy, as his only surviving beneficiary, had received benefits from the testator's Post Office pension fund.

the testator behind the counter at the post office. The testator's daughter, Kathy, had married and was living with her family in South Carolina but continued to correspond with her father.

The contestant of a will has the burden of proving the existence of a forgery by clear and convincing evidence. See: *In re Estate of Elias,* 429 Pa. 314, 321, 239 A.2d 393, 396 (1968); *In re Kadilak's Estate,* 405 Pa. 238, 243, 174 A.2d 870, 873 (1961). Mere suspicion and conjecture cannot take the place of evidence. *In re Estate of Elias, supra* (citing cases). In the instant case, appellant and one other witness testified that they did not believe that the signature which appeared on the codicil was that of the decedent. However, appellant did not produce a handwriting expert, and other witnesses stated that they recognized the signature as that of the testator. Moreover, the will had been executed in an attorney's office before subscribing witnesses. In view of this evidence, the court could properly conclude, as it did, that forgery had not been proved.

The law concerning testamentary capacity is well settled.

A testator possesses testamentary capacity if he knows those who are the natural objects of his bounty, of what his estate consists, and what he desires done with it, even though his memory may have been impaired by age or disease. *Estate of Reichel,* 484 Pa. 610, 400 A.2d 1268, 1270 (1979); *In re Estate of Hastings,* 479 Pa. 122, 127, 387 A.2d 865, 867 (1978); *Cohen Will,* 445 Pa. 549, 551 n. 1, 284 A.2d 754, 755 n. 1 (1971). The burden of proving testamentary capacity is initially with the proponent; however, a presumption of testamentary capacity arises upon proof of execution by two subscribing witnesses. Thereafter, the burden of proof as to incapacity shifts to the contestants to overcome the presumption by clear, strong and compelling evidence. *In re Estate of Hastings, supra; Cohen Will, supra,* 445 Pa. at 551, 284 A.2d at 755; *In re Estate of Brantlinger,* 418 Pa. 236, 242, 210 A.2d 246, 249–50 (1965). Furthermore, proof of

execution does not require any representation of testamentary capacity by attesting witnesses. *In re Estate of Brantlinger, supra,* 418 Pa. at 241, 210 A.2d at 249. The condition of the testator at the very time of execution is crucial; however, evidence of capacity or incapacity for a reasonable time before and after execution is admissible as indicative of capacity. *In re Estate of Hastings, supra; Williams v. McCarroll,* 374 Pa. 281, 293, 97 A.2d 14, 19–20 (1953). Finally, old age, sickness, distress or debility of body neither proves nor raises a presumption of incapacity. *In re Estate of Hastings, supra,* 479 Pa. at 129, 387 A.2d at 868; *In re Estate of King,* 369 Pa. 523, 528, 87 A.2d 469, 472 (1952).

*In re Estate of Kuzma,* 487 Pa. 91, 95, 408 A.2d 1369, 1371 (1979). See also: *In re Estate of Hastings,* 479 Pa. 122, 127, 387 A.2d 865, 867 (1978); *In re Estate of Ziel,* 467 Pa. 531, 537, 359 A.2d 728, 731 (1976).

The challenged codicil in the instant case was signed before two subscribing witnesses. There is a presumption, therefore, that the testator had testamentary capacity at the time when he signed the codicil. The trial court found that appellant had failed to overcome the presumption of capacity, and we find nothing in the record that would permit us to disturb that finding.

An inference of testamentary incapacity does not arise merely because the testator made an unnatural testamentary disposition. *Kish v. Bakaysa,* 330 Pa. 533, 536, 199 A. 321, 323 (1938). Neither is the presumption of testamentary capacity overcome by proof of physical incapacity or because there has been a recent death in the family. The testator's decision to change his will after the death of his daughter to whom he had left his entire estate was certainly not an abnormal act. Although the testator's bereavement was undoubtedly real, the trial court found, it was not incapacitating. Finally, even if, as appellant suggests, the testator suspected that she was not his natural daughter, she did not show that his suspicion had risen to the level of

an insane delusion sufficient to deprive him of testamentary capacity.

A confidential relationship exists where on the one side there is an overmastering influence or, on the other, weakness, dependence, or trust, justifiably imposed. *Estate of Krempasky,* 348 Pa.Super. 128, 131, 501 A.2d 681, 682 (1985). To meet the burden of proving undue influence, appellant was required to establish by clear and convincing evidence that (1) the testator was of weakened intellect when he signed the codicil; (2) Martel was in a confidential relationship with the testator; and (3) Martel received a substantial benefit under the codicil. Only if this burden were met, would the burden of proof shift to the proponent of the codicil to show the absence of undue influence. *In re Estate of Jakiella,* 353 Pa.Super. 581, 585–586, 510 A.2d 815, 817 (1986). To constitute "undue influence" sufficient to void a will there must be clear and convincing evidence of "imprisonment of the body or mind, frauds or threats or misrepresentation, or circumstances of inordinate flattery, or physical or moral coercion to such as degree as to prejudice the mind of the testator or destroy his free agency, or to operate as present restraint upon him in the making of the will." *In re Brantlinger's Estate,* 418 Pa. 236, 250–251, 210 A.2d 246, 254 (1965).

In the instant case, there was no evidence to establish that Martel enjoyed an overmastering influence over the testator. Although appellant asserted that the testator had been suffering from a weakened intellect, the trial court found credible the testimony of the proponent's witnesses that "nobody influenced Bob Angier.... He had a mind of his own." After hearing the evidence, the court concluded that "it is difficult, if not impossible to imagine that the decedent was ever in a position of dependence on anyone."

Finally, we reject appellant's contention that the will is invalid because testator was acting under a mistake of fact concerning appellant's parentage. Even if the testator had been mistaken in suspecting that appellant was not his biological daughter, this was not the type of "mistake of

fact" which would invalidate the will. See: 79 Am.Jur.2d Wills §§ 415, 417. See generally: 94 C.J.S. Wills § 223; *In re Alexander's Estate,* 206 Pa. 47, 55 A. 797 (1903); *In re Estate of Piper,* 18 Adams L.J. 99 (1976).

AFFIRMED.