408 A.2d 1369

**In re ESTATE OF Andrew KUZMA, Deceased.**

**Appeal of Michael KUZMA and Florence Savko, Exceptants.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1979.

Decided Dec. 21, 1979.

Bernard J. Hessley, Warren, for appellants.

William F. Morgan, Warren, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

This is a will contest. The appellants, contestants in the court below, challenge the final decree of the Court of Common Pleas of Warren County, Orphans' Court Division, upholding a written instrument as the last will and testament of Andrew Kuzma, deceased. The appellants, Michael Kuzma and Florence Savko, are two of the decedent's six surviving children. His wife and two children preceded him in death.[1]

The decedent died on January 30, 1977. The challenged instrument is dated and was executed on February 23, 1970 while the decedent was a patient in the Corry Community Hospital. The instrument is a printed form captioned "Last Will and Testament" which contained blank spaces permitting inclusion of the designation of the names of the maker of the will and those who are to receive and administer his

---

1. The heirs of these two children, if any, are not involved in the instant case.

or her estate. The instrument in pertinent part directs that the residue of the estate (in effect the net estate, since no specific legacies are provided for)[2] be given to Paul Kuzma, a son, and Martha Komenda, a daughter. These same two children are designated as executor and executrix, respectively. According to uncontradicted testimony in the trial court, the blanks in the instrument, providing for the disposition of the estate and appointments of the testator's representatives, were all filled in by Martha Komenda, one of the two beneficiaries, in the presence of the decedent and at his direction. Additional uncontradicted testimony established that an attorney was also present and that he read the completed instrument to the decedent following which the decedent expressed his satisfaction and signed his name thereto. It was witnessed by three disinterested witnesses.

Further uncontradicted testimony established the decedent was admitted to the hospital on February 16, 1970 after complaining of intense pain in the abdomen and while suffering nausea and fever. Following admission, an examination revealed, inter alia, jaundice, hernia, and an enlarged liver. The decedent was described as critically ill. On February 23, the day of the signing of the "Last Will and Testament," the decedent was given demerol to relieve pain. On the following day, February 24, he underwent surgery to relieve peritonitis, a hernia, and a stone in the common duct of the gall bladder.

First, the appellants complain the trial court erred in finding the decedent possessed testamentary capacity at the time of the execution of the instrument. They point with emphasis to the testimony of two physicians, Dr. Cruz and Dr. Tate, who attended the decedent in the hospital and who stated that, on the day in question, decedent was very ill physically, probably suffering severe pain, and lacked testamentary capacity. Dr. Tate said decedent was mentally confused on February 23. Appellants urge the court capriciously disregarded this testimony.

2. The gross estate consisted of $6,000.00 in personalty and a one-hundred-eighty-five-acre farm.

■ The law concerning testamentary capacity is well-settled. A testator possesses testamentary capacity if he knows those who are the natural objects of his bounty, of what his estate consists, and what he desires done with it, even though his memory may have been impaired by age or disease. *Estate of Reichel*, 484 Pa. 610, 400 A.2d 1268, 1270 (1979); *In re Estate of Hastings*, 479 Pa. 122, 127, 387 A.2d 865, 867 (1978); *Cohen Will*, 445 Pa. 549, 551 n. 1, 284 A.2d 754, 755 n. 1 (1971). The burden of proving testamentary capacity is initially with the proponent; however, a presumption of testamentary capacity arises upon proof of execution by two subscribing witnesses. Thereafter, the burden of proof as to incapacity shifts to the contestants to overcome the presumption by clear, strong and compelling evidence. *In re Estate of Hastings*, supra; *Cohen Will*, supra 445 Pa. at 551, 284 A.2d at 755; *In re Estate of Brantlinger*, 418 Pa. 236, 242, 210 A.2d 246, 249–50 (1965). Furthermore, proof of execution does not require any representation of testamentary capacity by attesting witnesses. *In re Estate of Brantlinger*, supra, 418 Pa. at 241, 210 A.2d at 249. The condition of the testator at the very time of execution is crucial; however, evidence of capacity or incapacity for a reasonable time before and after execution is admissible as indicative of capacity. *In re Estate of Hastings*, supra; *Williams v. McCarroll*, 374 Pa. 281, 293, 97 A.2d 14, 19–20 (1953). Finally, old age, sickness, distress or debility of body neither proves nor raises a presumption of incapacity. *In re Estate of Hastings*, supra, 479 Pa. at 129, 387 A.2d at 868; *In re Estate of King*, 369 Pa. 523, 528, 87 A.2d 469, 472 (1952).

While the testimony of the attending physicians supports appellants' position that the decedent lacked testamentary capacity, it is not the only testimony in the record pertaining to this issue. In fact, the physicians' testimony was flatly contradicted by several lay witnesses.

For example, Martha Komenda testified that, at the time involved, her father was mentally alert, cognizant of his children, and conversant with his property.

Paul Kuzma testified that decedent inquired about the care of the farm and cattle; that he knew who his children were; and, that decedent wanted the farm to remain with Paul and Martha. Paul testified that decedent did not want the farm sold, but that he wanted it to remain as it was, open to decedent's family.

Two of decedent's children, who were not named as beneficiaries under the will, testified in support of decedent's testamentary capacity. Alice Deming, decedent's daughter, visited decedent in Corry Community Hospital on February 22, 1970, the day before decedent executed his purported will. She testified that decedent recognized her, cautioned her to drive safely when she left the hospital, and remarked Martha and Paul were working on the farm. She testified decedent's mind was clear. Finally, she testified decedent always maintained that he did not want the farm sold, rather he wanted the farm to remain with the family.

Agnes Kiehart, decedent's daughter, testified decedent wanted the farm to remain in the care of Paul and Martha because they worked on the farm for many years. Agnes also testified that, in her presence, decedent directed Martha to fill out the form will and to leave the farm to Paul and Martha. Finally, Agnes testified decedent's illness did not in any way affect his mind. She stated decedent recognized his children. She flatly contradicted the physicians' testimony; she stated decedent "knew what he was saying" on February 23, 1970.

Finally, a longtime friend of decedent, Albert Stoffan, testified that decedent's mind was "good" on February 23, 1970; that decedent recognized him; and, that decedent was cognizant of the state of affairs at the farm.

Moreover, a careful study of the physician-witnesses' testimony indicates some material weaknesses.

Although Dr. Tate testified, on direct examination, that the decedent was mentally confused on February 23, he could point to no hospital or medical record to substantiate this. He also conceded that, due to the passage of time, it

was very difficult at the time he testified to specifically remember the decedent's mental condition. He further conceded the testator executed a written consent to surgery on the same day the instrument under challenge was executed. While Dr. Cruz opined on direct examination that decedent lacked testamentary capacity, he admitted on cross-examination that he had no personal recollection of the purported testamentary incapacity and that his direct testimony was based solely on the severity of decedent's illness, as indicated by hospital records. He also admitted the decedent recognized him on February 23 and realized the necessity for surgery. Finally, he said the decedent was cognizant of his children and the farm.

An examination of the trial court's adjudication, which was affirmed by a court en banc, clearly demonstrates that, rather than disregarding the physician's testimony, the court carefully considered it and evaluated it after comparing it with other evidence in the record.

■ It is clear that the findings of the trial court are supported by adequate and competent evidence and, hence, are binding in this appeal. See *Estate of Reichel*, supra, 484 Pa. at 614, 400 A.2d at 1270; *Estate of Hastings*, supra, 479 Pa. at 130, 387 A.2d at 869. It is also clear that the conclusion of mental capacity is amply supported by these findings. Finally, we find no error of law or abuse of discretion in the court's ruling.

■ Second, appellants argue that paragraph two of the will is not dispositive to Paul Kuzma and Martha Komenda because their names are written below a blank space provided in the form will for the insertion of the names of beneficiaries. We cannot agree.

The record fully supports decedent's intention to leave the farm to Paul and Martha. Martha Komenda completed the form will at decedent's direction. Decedent signed the will at the end after the will was filled out. The small space in which to insert the names of beneficiaries was simply not large enough for the insertion of the phrase "Son Paul

Kuzma and Daughter Martha Komenda." From the face of the will, it is clear that Paul Kuzma and Martha Komenda, whose names were written beneath the blank space, were to be the recipients of decedent's entire residual estate.[3]

■ Third, appellants contend that the second paragraph is not dispositive because it is not in the form of a sentence. When one inserts the names, Paul Kuzma and Martha Komenda, into the appropriate space, the sentence is complete. At any rate, sentence structure and grammatical construction cannot defeat decedent's intention to give his estate to Martha and Paul. See *Clark Estate*, 359 Pa. 411, 417–18, 59 A.2d 109, 112 (1948).

■ Finally, appellants argue the will does not express decedent's intentions. Appellants support this claim by noting that decedent referred to the will as a "piece of paper." Appellants' reliance on *Hunter Will*, 416 Pa. 127, 205 A.2d 97 (1964), for support, is misplaced. The *Hunter* court stated, merely as a matter of fact, that the evidence therein indicated decedent knew she signed a "paper," but that no reference was made to the paper as a will. The *Hunter* court mentioned this fact in connection with the issue of testamentary capacity, not in reference to decedent's intentions. In the instant case, decedent, who was not well-educated in English, directed his daughter to complete the form will, captioned "Last Will and Testament," and to leave his estate to Paul and Martha. Decedent did refer to the will as a "piece of paper"; however, the lower court found, and its finding is amply supported, that decedent intended this "piece of paper" to dispose of his property at death. The record discloses, *inter alia*, that Frank McKnight, Esquire, read the contents of the will to the decedent. The decedent indicated that he was satisfied with the version read to him

3. There is a lack of authority directly on point; however, at least one court has held that interlineations which are present only to fill in blanks or to complete the sense of the instrument need not be proved, but are presumed to be part of the will. *Henne's Estate*, 39 Berks County, L.J. 1, 3 (Orphans' Court 1946).

Appellants do not contend that the interlineations were inserted by decedent or another person after execution.

and, after the reading, he executed the will. Accordingly, the decedent intended this document to dispose of his estate.

Decree affirmed. Each party to pay own costs.

MANDERINO, J., did not participate in the decision of this case.