Estate of Anton VANONI, Deceased.

**Appeal of Barry K. Vanoni
and Irene D. Ewaka.**

Superior Court of Pennsylvania.

Argued November 7, 2001.
Filed April 5, 2002.
Reargument Denied June 6, 2002.

James F. Mannion, King of Prussia, for appellants.

Jay G. Fischer, Downingtown, for Buchanan, appellee.

Before: McEWEN, P.J.E., JOHNSON, and JOYCE, JJ.

OPINION BY McEWEN, P.J.E.

¶ 1 This appeal has been taken from the order entered by the Chester County Orphans' Court *en banc*, which dismissed the exceptions and thereby rejected the appeal of appellants, Barry K. Vanoni and Irene D. Ewaka, from the admission to probate of the September 4, 1996 will ("1996 will") of Anton Vanoni ("decedent"). We are constrained to reverse.

¶ 2 Anton Vanoni died on May 17, 1997, two years after the death of his wife on February 12, 1995. On June 16, 1992, the decedent had executed a will ("1992 will") which benefited his wife, and, if she predeceased him, his son and daughter. The

decedent, who was 91 years old at the time of his death, is survived by his son and daughter, appellants herein, and a grandson. This appeal focuses upon the events between the death of the decedent's wife and his own demise over twenty-seven months later, specifically:

**April 25, 1995** The distinguished Judge Lawrence E. Wood, after a hearing, enters an order which (1) finds, pursuant to 20 Pa.C.S. § 5512.1 ("Determination of incapacity and appointment of guardian"), that decedent's capacity to make and communicate decisions is impaired due to "senility & dementia, resulting in obvious paranoia," and that decedent's "ability to make *sensible* decisions is impaired," although his "ability to communicate is relatively intact", and (2) appoints First National Bank of West Chester as plenary guardian of decedent's estate, and appellant Ewaka as limited guardian of the decedent's person.

**July 27, 1995** Judge Wood dismisses decedent's exceptions to the order of April 25, 1995, and denies appellants' petition to compel removal to a nursing facility.

**January 3, 1996** After a review hearing pursuant to the guardianship statute, 20 Pa.C.S. § 5512.2, held on December 28, 1995, Judge Wood enters an order which (1) finds decedent's ability to understand and communicate is "improved" but that "he is not able to manage his finances", and (2) continues the appointment of the First National Bank of West Chester as guardian of the decedent's estate but restricts the authority of appellant Ewaka as limited guardian of the person.

**February 7, 1996** As a result of the resignation of appellant Ewaka as guardian of the person of the decedent, Judge Wood rescinds Ewaka's appointment and makes no substitute appointment of guardian of the person.

**June 14, 1996** The SPCA contacts Attorney Jay Fischer, by letter, stating that it had received a phone call from the decedent who said that he would like to leave his entire estate to the SPCA.

**June 18, 1996** Attorney Fischer meets with the decedent, and also contacts for information, Attorney Lauren Buchanan, who had represented decedent at the review hearing.

**July 1, 1996** Mr. Fischer sends the decedent a draft of the new will.

**September 4, 1996** The decedent, in the presence of employees of the law firm of Attorney Lauren Buchanan, executes a new will leaving his entire estate to the SPCA.

September 6, 1996 Mr. Fischer sends the SPCA a copy of the executed will with a letter wherein he states that "there is a serious and substantial question about the competency of Mr. Vanoni to execute this will", while adding that "I am confident that he has sufficient testamentary capacity to make a valid will."

The decedent died eight months after execution of the 1996 will, on May 17, 1997, and, on May 29, 1997, upon the petition of appellants, the decedent's 1992 will was admitted to probate, and letters testamentary were granted to appellants. Two and one-half months later, on August 14, 1997, Attorney Lauren Buchanan filed a petition for citation to show cause why the letters testamentary granted appellants should not be revoked, and new letters testamentary issued to Attorney Buchanan, as executrix of the decedent's will executed September 4, 1996. On September 19, 1997, appellants filed an answer to the petition alleging that the decedent lacked testamentary capacity to execute the 1996 will.

On January 23, 1998, the SPCA joined Attorney Buchanan's petition.

¶ 3 The register of wills, after hearings held on April 16, April 17, June 9, June 10, and June 25, 1998, issued a decree and opinion which found, *inter alia*, (1) that the "witnesses presented by both sides were credible", (2) that "the evidence was conflicting, i.e. anything but clear", and then concluded: "Consequently, the register finds that proponent has not proven, by clear and convincing evidence, that decedent possessed testamentary capacity at date of the execution of the later will." Thus, the register refused to revoke appellants' letters testamentary and dismissed the petition for citation to show cause. The SPCA then filed an appeal from the ruling of the register to the orphans' court. Judge Wood undertook *de novo* review [1] of all of the testimony before the register of wills, and also considered the testimony taken before him during the decedent's lifetime, and then proceeded to reverse the register of wills and issue letters upon the SPCA will. The court's decree *nisi* included the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Anton Vanoni was born in Germany on September 3, 1905, and died a resident of Chester County on May 17, 1997.

2. He was survived by two children, Barry K. Vanoni and Irene D. Vanoni, and by one grandchild, James Ewaka.

3. The two children of Anton Vanoni filed a petition for grant of letters on May 19, 1997. Their petition was based on a will executed by decedent on June 16, 1992. That will left decedent's estate to his wife if she survived him, and to his children, if she did not. Decedent's wife predeceased him on February 12, 1995.

4. Letters were granted to decedent's children based on the 1992 will.

5. On August 14, 1997, Lauren Buchanan, Esquire, filed a petition for citation to show cause, which asked the register, in essence, to revoke the prior issuance of letters and to issue new letters to Ms. Buchanan based on a will dated September 4, 1996. This will was the will which favored the SPCA.

6. Prior to decedent's death, Barry Vanoni and Irene Ewaka had filed a petition asking me to appoint a guardian for Mr. Vanoni. There were basically two rounds of hearings. In the first, I appointed the First National Bank as guardian of his estate, and his daughter as guardian of his person. In the second round of hearings, I limited the guardianship of the person, and subsequently Irene Ewaka resigned as guardian of her father's person.

7. My second order was in effect when Mr. Vanoni executed the SPCA will.

8. The record supports the following conclusions about Anton Vanoni:

---

1. Judge Wood, in his opinion, stated that, "I have not taken any further testimony. I have, however, reviewed the voluminous records of testimony taken in front of the register, and by agreement of counsel, I have also considered testimony taken in front of me during Mr. Vanoni's lifetime." The judge further noted that he has "set forth my own factual conclusions based on that testimony." The orphans' court's *en banc* opinion likewise noted that "the findings of fact made by Judge Wood were made by him *de novo*, with the concurrence of counsel."

a. He had a vitamin B12 deficiency which affected his mental abilities. He was not good about taking his vitamin B supplements.

b. He had a stroke in June of 1994 which further affected his mental abilities.

c. He was at times disoriented, but at other times (including the second hearing in front of me) very clear about where he was, what he was doing, and what his wishes were.

d. He was highly suspicious of people, and would have regular fallings out with, among others: his son and daughter; the home health people who came to his house; Linda Schaefer from the First National Bank (the First National Bank had been appointed the guardian of his estate); and even Lauren Buchanan, Esquire, the attorney who represented him from the time of the second guardianship hearing forward.

e. He was, at least from the time of the second guardianship hearing forward until the time of his death, very certain that his children had stolen from him and tried to deprive him of his liberties, and he was determined that they should not receive any part of the estate.

f. Although he had moments of clarity, it was clear to me that his mental state was such that he could not be entrusted with the management of his own financial affairs on an ongoing basis. It was further clear to me that he was incapable of making sound decisions about his own health care.

g. He was aware in a general way of the natural objects of his bounty and the extent of his estate. He knew that he had two children and a grandchild, but his recitation to others about his contacts with them w[as] very often fallacious. He also wavered between asserting that he was a millionaire and asserting that he was a pauper. He had exaggerated and mistaken notions about the assets in his estate.

\*    \*    \*    \*    \*    \*

### CONCLUSIONS OF LAW

1. The will executed by Anton Vanoni on June 16, 1992 was revoked by a later will executed September [4], 1996.

2. The will of September 4, 1996 is entitled to probate.

3. Anton Vanoni did not suffer from an insane delusion.

4. Anton Vanoni had testamentary capacity as of September 4, 1996.

¶ 4 Appellants, Barry K. Vanoni and Irene D. Ewaka, contend that the trial court erred by failing to require the SPCA, as proponent of the 1996 will, a document executed after the adjudication of incapacity of the decedent, to prove the decedent's testamentary capacity by clear and convincing evidence. Appellants also argue that the SPCA failed to prove the decedent's testamentary capacity by clear and convincing evidence.

■ ¶ 5 We are mindful that, in reviewing the order which sustained the admission to probate of the 1996 will of the decedent,

[a] decree of the Orphans' Court may be altered on appeal only if the findings on which it rests are not supported by competent or adequate evidence or if there

has been an error of law, an abuse of discretion, or a capricious disbelief of competent or credible evidence.

*In re Estate of Hastings,* 479 Pa. 122, 130, 387 A.2d 865, 869 (1978).

¶ 6 In this case the trial court had ordered the appointment of a plenary guardian of the decedent's estate, and a limited guardian of the decedent's person on April 25, 1995, pursuant to 20 Pa.C.S. § 5512.1 ("Determination of incapacity and appointment of guardian"), over sixteen months prior to the decedent's execution of the September 4, 1996 will. The effect of such an adjudication was addressed by our Supreme Court in *In re Estate of Hastings, supra,* where the testatrix was adjudicated a mental incompetent and a guardian of her estate was appointed, and she thereafter executed a will. The Court held that the burden shifted to the proponent of the will to show by clear and convincing evidence that at the time the will was made the testatrix possessed testamentary capacity:

A testatrix possesses testamentary capacity if she knows those who are the natural objects of her bounty, of what her estate consists, and what she desires done with it, even though her memory may have been impaired by age or disease. *See Brantlinger Will,* 418 Pa. 236, 236, 210 A.2d 246 (1965); *Hunter Will,* 416 Pa. 127, 205 A.2d 97 (1964); *Sommerville Will,* 406 Pa. 207, 177 A.2d 496 (1962); *Williams v. McCarroll,* 374 Pa. 281, 97 A.2d 14 (1953).

The burden of proof as to testamentary capacity initially rests with the proponent of a will. However, a presumption of testamentary capacity arises upon proof of execution by two subscribing witnesses. *Heiney Will,* 455 Pa. 574, 318 A.2d 700 (1974); *Brantlinger Will, supra; Williams v. McCarroll, supra.* Thereafter, the burden of proof as to

incapacity shifts to the contestant to overcome that presumption. *Heiney Will, supra; Brantlinger Will, supra; Gold Will,* 408 Pa. 41, 182 A.2d 707 (1962); *Masciantonio Will,* 392 Pa. 362, 141 A.2d 362 (1958). Moreover, where a will is drawn by decedent's attorney and proved by subscribing witnesses, ..., the burden of proving lack of testamentary capacity is sustained only if the contestant can produce clear and compelling evidence of lack of testamentary capacity. *Williams v. McCarroll, supra.* In addition, it is well-recognized that testamentary capacity is to be determined by the condition of the testatrix at the very time she executes the will. *Lanning Will,* 414 Pa. 313, 200 A.2d 392 (1964); *Masciantonio Will, supra; Williams v. McCarroll, supra.* However, evidence of incapacity for a reasonable time before and after the making of a will is admissible as an indication of lack of capacity on the day the will is executed. *Masciantonio Will, supra; Skrtic Will,* 379 Pa. 95, 108 A.2d 750 (1954); *Williams v. McCarroll, supra; Higbee Will,* 365 Pa. 381, 75 A.2d 599 (1950).

\*     \*     \*     \*     \*     \*

An adjudication of mental incompetency near the date of execution of a will does not necessarily prove lack of testamentary capacity. *See Lanning Will, supra; Higbee Will, supra.* Where a person is adjudicated a mental incompetent and thereafter executes a will, the burden is shifted to the proponent of the will to show by clear and convincing evidence that at the time the will was made such person possessed testamentary capacity. *Lanning Will, supra,* and cases cited therein.

*In re Estate of Hastings, supra* at 127–128, 387 A.2d at 867–868. Thus, in this case, the order of April 25, 1995 (adjudicat-

ing decedent's incapacity) served to shift the burden of proof to the SPCA to show by clear and convincing evidence that the decedent had testamentary capacity at the time of the execution of the 1996 will.

¶ 7 Judge Wood, having conducted *de novo* review of the same testimony presented to the register of wills, and having also considered the testimony taken before him during the decedent's lifetime, rendered the following legal analysis:

> Since Anton Vanoni has been adjudicated to be an incapacitated person at the time he executed his will, most of the texts and the statements in the cases say that the burden was on the SPCA to prove by clear and convincing evidence that he did in fact have testamentary capacity: *see e.g.,* Summary of PA Jurisprudence 2d, Probate, Estates, and Trusts, section 1:58, citing in footnote 28 the case of *Estate of Hastings,* 479 Pa. 122, 387 A.2d 865 (1978). *Estate of Hastings* does indeed say that "[w]here a person is adjudicated a mental incompetent and thereafter executes a will, the burden is shifted to the proponent of the will to show by clear and convincing evidence that at the time the will was made such person possessed testamentary capacity": 479 Pa. at 128, 387 A.2d at 868. However, *Hastings* cites *Lanning's Estate,* 414 Pa. 313, 200 A.2d 392 (1964) for that proposition, without attribution of a particular page number.
>
> If we look at *Lanning's Estate,* 414 Pa. at 322, 200 A.2d at 396, we find that it does say that "where a person is adjudicated to be a mental incompetent and thereafter, the burden is shifted to the proponent of the will to show that *at the time the will was made* such person possessed testamentary capacity."
>
> However, *Lanning's Estate* doesn't say anything about providing clear and convincing evidence in order to overcome the presumption. One of the issues in the case was the date of the execution of the will, and it does go on to say that the date inserted by the testator himself is presumed to be correct and can only be overcome by clear and convincing evidence.
>
> The conjunction of these two thoughts— the presumption of incapacity, and the presumption of the date of execution— might have been what led to the later conclusion that the presumption of incapacity could only be overcome by clear and convincing evidence. I don't know. I can't read the minds of the judges who decided the later cases.
>
> I have, however, had the experience of analyzing evidence with the thought in mind that a certain proposition could only be overcome by clear and convincing evidence. It is a daunting burden, and one that, when imposed, can seldom be overcome. In this case, if I were to apply that standard mechanically, I would be hard pressed to say that the SPCA has met its burden. The register obviously was not convinced.
>
> The difficult thing about this case is that I observed Mr. Vanoni during his lifetime. By my own orders, I created the presumption, as it were. However, at the same time I was doing that, I was aware of very sad fact that Mr. Vanoni had clear and unmistakable feelings about his son and daughter. (I call that "very sad", because I believe that his feelings were based on a wrong-headed reaction to the fact that they were trying to help him.) Because of the circumstances of this case, I will simply ask myself: Has the SPCA carried its burden of proving that Anton Vanoni had testamentary capacity at the time he executed the 1996 will. The test is whether "he knows those who are the natural objects of his bounty, of what his

estate consists, and what he desires done with it, even though his memory may have been impaired by age or, disease": *Estate of Kuzma,* 487 Pa. 91, 408 A.2d 1369, at 1371 (1979). I simply can't ignore the fact that the man himself stood in front of me and said, clearly and unmistakably, "I am renouncing my children." (N.T. of Dec. 28, 1995, at p. 23). I would like to be able to say that his reaction was an "insane delusion", but I really don't think it was, as the law defines that term. Frankly, I am unable in my own mind to view Mr. Vanoni any differently than the Court viewed the testatrix in *Somerville Will,* 406 Pa. 207, 177 A.2d 496 (1962), in which a mother with an unreasoning hatred was allowed to disinherit her daughter, or *Estate of Agostini,* 311 Pa.Super. 233, 457 A.2d 861 (1983), where a decedent dissatisfied with treatment by a daughter was allowed to disinherit her daughter. As set forth in *Agostini,* 457 A.2d at 865, "a testator does not have to give any of his property to those he loves or to the relatives society believes he should love, and he can give it in such a way that ninety-nine percent of his fellow-citizens believe is foolish, unjust or outrageous." That is exactly what Anton Vanoni has done here.

█ ¶ 8 Having carefully considered this opinion, we find that the trial court was properly aware that "the burden was on the SPCA to prove by clear and convincing evidence that [the decedent] did in fact have testamentary capacity." The court even observed that "it is a daunting burden … that … can seldom be overcome." Indeed, the trial judge states that "if I were to apply this standard mechanically, I would be hard pressed to find that the SPCA has met its burden." Nonetheless, the court, after "simply" asking itself: "Has the SPCA carried its burden of prov-

ing that Anton Vanoni had testamentary capacity at the time he executed the 1996 will", responded in the affirmative. It merits emphasis that the court did not state what standard it was applying, as well as reiteration that the court found in favor of the SPCA, contrary to its previous statement that it would be "hard pressed to say that the SPCA has met its burden".

█ ¶ 9 We find that the evidence presented by the SPCA was not sufficient to sustain its burden of proof. Once the burden shifted to the SPCA due to the adjudication of incapacity, it was incumbent upon the SPCA to show by clear and convincing evidence that the decedent had testamentary capacity at the time he executed the 1996 will. *In re Estate of Hastings, supra.* "This burden requires proof greater than a mere preponderance, *Girsh Trust,* 410 Pa. 455, 471, 189 A.2d 852, 859 (1963), but less than beyond a reasonable doubt[,] *Petro v. Secary Estate,* 403 Pa. 540, 543, 170 A.2d 325, 327 (1961)." *In re Estate of Button,* 459 Pa. 234, 241 n. 7, 328 A.2d 480, 484 n. 7 (1974).

¶ 10 As previously noted, the register of wills, after hearing testimony, found that "witnesses presented by both sides were credible," that "the evidence was conflicting, i.e. anything but clear," and concluded: "Consequently, the register finds that proponent has not proven, by clear and convincing evidence, that decedent possessed testamentary capacity at date of the execution of the later will." Judge Wood, after his review of the same evidence, acknowledged the register's determination: "In this case, if I were to apply that standard mechanically, I would be hard pressed to say that the SPCA has met its burden. The register obviously was not convinced." Thus, we are not persuaded that the court could validly conclude that the SPCA had satisfied its burden.

¶ 11 "[I]t is well recognized that testamentary capacity is to be determined by the condition of the testat[or] at the very time [he] executes the will." *In re Estate of Hastings, supra,* 479 Pa. at 127, 387 A.2d at 867. "[A]lthough evidence as to capacity which is reasonably distant from the time of execution is admissible as indicative of capacity on the particular day, testimony as to testat[or]'s condition close to that time must be considered more significant." *In re Estate of Clark,* 461 Pa. 52, 64–65, 334 A.2d 628, 634 (1975), citing *Brantlinger Will,* 418 Pa. 236, 248, 210 A.2d 246, 253 (1965), and *Lanning Will,* 414 Pa. 313, 317, 200 A.2d 392 (1964). *See also: In re Estate of Kuzma,* 487 Pa. 91, 95, 408 A.2d 1369, 1371 (1979) ("The condition of the testator at the very time of execution is crucial; however, evidence of capacity or incapacity for a reasonable time before and after execution is admissible as indicative of capacity.")

¶ 12 Despite this legal principle, which requires that a decedent's testamentary capacity be determined as of the date of the execution of the will, the court's finding of testamentary capacity rested upon the court's observation of the decedent when he renounced his children on December 28, 1995, *some nine months prior to his execution of the 1996 will.* This evidence falls considerably short of the burden of proof upon the SPCA to establish by clear and convincing evidence that the testator had testamentary capacity at the time he executed the will. This is especially so since Attorney Fischer himself, in forwarding the executed will, dated September 4, 1996, to the SPCA, by letter of September 6, 1996, recognized that "*there is a serious and substantial question about the competency of Mr. Vanoni to execute this will,*" even as he stated that "I am confident that he has sufficient testamentary capacity to make a valid will."

¶ 13 The SPCA posits in its brief that "if Judge Wood believed the decedent had testamentary capacity in December of 1995, he necessarily disbelieved the contestants' position and would have reason to find credible the five (5) unrebutted SPCA eyewitnesses who testified that the decedent was competent to execute the SPCA will at the critical moment—the very time of execution." However, the SPCA's position ignores the fact that the judge shared the view of the register, for the trial judge, after his *de novo* review of the same testimony presented to the register, stated that "if I were to apply that standard mechanically, I would be hard pressed to say that the SPCA has met its burden."

¶ 14 Accordingly, as we find that the evidence relied upon by the court was insufficient to establish, by clear and convincing evidence, the decedent's testamentary capacity on September 4, 1996, we are constrained to reverse the order of the orphans' court which admitted to probate the September 4, 1996 will of Anton Vanoni.

¶ 15 Order vacated. Case remanded. Jurisdiction relinquished.