J-A05024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF GERALDINE MANTELL, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: RICHARD HOWDEN | No. 1653 EDA 2015 |

Appeal from the Order entered January 21, 2015
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2012-X3560

BEFORE:  OLSON AND OTT, JJ. and STEVENS,* P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 04, 2016**

Appellant, Richard Howden,[1] appeals *pro se*[2] from the order entered on

January 21, 2015.  We affirm.

The trial court accurately summarized the factual background of this

case as follows:

> Geraldine Mantell, M.D. (hereinafter "Decedent" []), died on
> September 28, 2012, a resident of Montgomery County, leaving
> a will dated March 14, 2008 (the "2008 will"). Decedent's 2008
> will was admitted to probate by the Register of Wills on October
> 9, 2012 and letters testamentary were granted to Stanley B.
> Levinsky [("Executor")] as executor.  Decedent never married
> and had no children.  Her closest living relatives are a nephew
> and niece, the children of her sister who [] predeceased her.
> Decedent was a medical doctor and left a sizable estate.
> According to the inventory for this estate filed on January 6,

---

[1] At oral argument, Appellant contended that he also represents Kathleen Howden in this appeal.  Kathleen Howden, however, never filed a notice of appeal and therefore is not a party to this appeal.  Moreover, Appellant cannot represent Kathleen Howden as he is not a licensed attorney.  It is well-settled that "a non-lawyer cannot represent another person in court." ***Commonwealth v. Carroll***, 517 A.2d 980, 982 (Pa. Super. 1986).

[2] Appellant was represented by counsel before the trial court.

* Former Justice specially assigned to the Superior Court

2014, Decedent's total personal and real property is valued at $5,385,936.89. Under the 2008 will, Decedent left specific bequests of $1,000.00 each to her niece[,] Kathleen Howden ("Kathleen")[,] and to her nephew[, Appellant], (hereinafter collectively referred to as "Contestants"). Decedent left the residue of her estate in the following shares: [80%] to Temple University Children's Medical Center and [20%] to Planned Parenthood of Southeastern Pennsylvania.

* * *

Decedent [] signed several other testamentary documents with similar dispositive provisions. Decedent executed a codicil to her October 2005 will on January 20, 2006 and a new [w]ill on July 25, 2007. In addition, Decedent re-executed her October 2005 will on January 26, 2006. Both the January 20, 2006 codicil and the January 26, 2006 re-executed will revoked paragraph Sixth A of the 2005 will, effectively changing the executor under the will. All other provisions of the re-executed will remain the same as the October 2005 will. Significantly, each of the wills - the July 2007 will, the January 2006 re-executed will[,] and the October 2005 will, as amended by the codicil . . ., provide for the same bequests to [Appellant and Kathleen] of $1,000.00 each.

Under earlier wills dated July 8, 2002 and February 13, 2003, Decedent left the sum of $1,000,000[.00] to [Kathleen], to be held in a trust, while leaving the residue of her estate to Temple University School of Medicine. [Appellant] was left nothing under the 2002 or 2003 [w]ills.

Trial Court Opinion, 1/21/15, at 1-2.

The procedural history of this case is as follows. On April 26, 2013, Appellant filed a petition to set aside Decedent's 2005 and 2008 wills. Appellant alleged that Decedent lacked testamentary capacity at the time those wills were executed. On October 9, 2013, Kathleen filed a petition to join Appellant's petition to set aside Decedent's 2005 and 2008 wills. On May 8, 2014, Executor moved for summary judgment. On January 21,

2015, the trial court granted summary judgment, finding that Contestants lacked standing to challenge the wills. This timely appeal followed.[3]

Appellant presents four issues for our review:[4]

1. Should the [trial court] have recused herself because she taught at Temple and represented NARAL[ Pro-Choice America, Inc. ("NARAL")]?

2. Did [C]ontestants have standing and were they aggrieved?

3. Did [Executor] exert undue influence over [Decedent]?

4. Is there sufficient evidence of incapacitation to [remand this case] to [the trial c]ourt [with] instruction[s to assign it to a new trial judge]?

Appellant's Brief at 7-8.

In his first issue, Appellant argues that the trial judge should have recused herself because of her ties to Temple and NARAL. This issue is waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This rule bars a litigant from arguing on appeal that the trial judge should have recused herself unless the litigant filed a motion for recusal before the trial court. *See Crawford v. Crawford*, 633 A.2d 155, 159 (Pa. Super. 1993) (citation

---

[3] The trial court did not order Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b).

[4] We have re-numbered the issues for ease of disposition.

omitted). Appellant did not file a recusal motion in the trial court. Accordingly, Appellant's first issue is waived.[5]

In his second issue, Appellant argues that he has standing to challenge the Decedent's 2005 and 2008 wills. "The question of standing is whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues." *In re C.R.*, 111 A.3d 179, 182 (Pa. Super. 2015) (internal alteration and citation omitted). Whether a litigant has standing is a pure question of law; therefore, our standard of review is *de novo* and our scope of review is plenary. *See In re Raymond G. Perelman Charitable Remainder Unitrust*, 113 A.3d 296, 305 n.12 (Pa. Super. 2015), *appeal denied*, 131 A.3d 492 (Pa. 2016).

The General Assembly has set forth who has standing to challenge a will. "Any party in interest who is aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree[.]" 20 Pa.C.S.A. § 908(a). "A party is aggrieved and therefore has standing when the party is directly and adversely affected by a judgment, decree or order and has some pecuniary interest which is thereby injuriously affected." *Estate of Seasongood*, 467 A.2d 857, 859 (Pa. Super. 1983) (citation omitted).

---

[5] To the extent that Appellant argues that this issue was preserved, that argument is waived for failure to specify where in the record the issue was preserved. *See* Pa.R.A.P. 2101, 2117(c).

In this case, Decedent's wills of July 8, 2002, October 3, 2005, January 26, 2006, July 25, 2007, and March 14, 2008, along with the January 20, 2006 codicil, bequeathed Appellant $1,000.00 or less. Thus, in order for Appellant to be entitled to more than $1,000.00, he needs to prove that Decedent lacked the testamentary capacity to execute each of those documents.[6] If he proves that Decedent lacked testamentary capacity to execute each of those documents, Appellant would be entitled to a greater portion of Decedent's estate.

A remote possibility of proving that Decedent lacked the testamentary capacity to execute each of those documents, however, is insufficient to confer standing on Appellant. Instead, in order for Appellant to have standing, he needs to prove that there is a "realistic possibility" that Decedent lacked testamentary capacity to execute each of those documents. **See In re Estate of Luongo**, 823 A.2d 942, 958 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1287 (Pa. 2003). Appellant did not establish such a realistic possibility of invalidating Decedent's testamentary documents.

As this Court has explained:

Testamentary capacity exists when the testator has intelligent knowledge of the natural objects of [her] bounty, the general composition of [her] estate, and what [] she wants done with it,

---

[6] On appeal, Appellant also argues that the wills are invalid because Executor exerted undue influence on Decedent. Appellant, however, did not make this claim in the trial court and therefore it is waived. **See** Pa.R.A.P. 302(a). To the extent that Appellant contends that this argument was preserved, that argument is waived for failure to specify where in the record the issue was preserved. **See** Pa.R.A.P. 2101, 2117(c).

even if [her] memory is impaired by age or disease. Neither old age, nor its infirmities, including untidy habits, partial loss of memory, inability to recognize acquaintances, and incoherent speech, will deprive a person of the right to dispose of [her] own property. In determining testamentary capacity, a greater degree of proof of mental incapacity is required than would be necessary to show the inability to conduct one's business affairs. Finally, testamentary capacity is to be ascertained as of the date of execution of the contested document.

*In re Estate of Smaling*, 80 A.3d 485, 494 (Pa. Super. 2013) (internal quotation marks and citations omitted). Although the proponent of a will originally bears the burden of proving testamentary capacity, a presumption of testamentary capacity arises "upon proof of execution by two subscribing witnesses." *In re Estate of Vanoni*, 798 A.2d 203, 207 (Pa. Super. 2002) (citation omitted). In this case, the wills were subscribed by two witnesses; thus, there is a presumption Decedent possessed testamentary capacity. Furthermore, as the wills were drafted by an attorney, in order to overcome the legal presumption, Appellant was required to prove by clear and convincing evidence that Decedent lacked testamentary capacity. *Id.* (citation omitted).

The Court of Common Pleas of Montgomery County previously held that, as of March 2008, Decedent was capable of controlling her own finances and managing her own financial affairs. Specifically, in March 2007 Rosemary Ferrino petitioned the court to declare Decedent an incapacitated person. In March 2008, the Court of Common Pleas appointed a guardian of the person for Decedent but declined to appoint a guardian of the estate and

instead held that Decedent had the requisite capacity to manage her own financial affairs. *See In re Mantell*, 2007-X1073 (C.C.P. Montgomery Mar. 18, 2008). This finding by the Court of Common Pleas was supported by the record. Decedent was examined by Dr. Todd Goldberg on August 6, 2007. After that examination, Dr. Goldberg opined that Decedent was mentally competent to manage her own affairs. Later in 2008, the Court of Common Pleas again found that Decedent was capable of managing her own financial affairs. It therefore denied a petition to appoint a guardian of the estate. *See In re Mantell*, 2007-X1073 (C.C.P. Montgomery Aug. 7, 2008). Based upon the well-supported findings of the Court of Common Pleas in March and August 2008, Appellant does not have a realistic possibility of proving by clear and convincing evidence that Decedent lacked the testamentary capacity to execute her 2008 will.

Furthermore, Appellant failed to present clear and convincing evidence that Decedent lacked testamentary capacity when she executed her prior testamentary documents. We focus our attention on the lack of evidence related to the 2002 will.[7] The earliest evidence Appellant relies upon to prove Decedent's incapacity is from 2004 – over 18 months after Decedent executed her 2002 will. With no evidence presented regarding Decedent's

_____

[7] As noted above, in order for Appellant to succeed he would need to show that there is a realistic possibility that all of Decedent's testamentary documents from 2002-2008 were invalid. Only then would Appellant be entitled to more than $1,000.00, and thus face injury by the probating of the 2008 will.

mental faculties during 2002, Appellant fell short of proving by clear and convincing evidence that Decedent lacked the testamentary capacity to execute that will (not to mention the several testamentary documents executed after that date).

As the trial court noted, Decedent suffered from severe mental illness during the latter portion of her life and was episodically incapable of managing her financial affairs. **See** Trial Court Opinion, 1/21/15, at 10. The Court of Common Pleas, however, twice held that Decedent possessed the requisite capacity to manage her own financial affairs in 2008, which is a higher standard than is required for testamentary capacity. Thus, Appellant failed to show that there was a realistic possibility of invalidating the necessary testamentary documents to confer standing upon Appellant. As Appellant lacked standing to challenge Decedent's wills, we decline to address his third and fourth issues on appeal which address the merits of his claims.[8]

In sum, Appellant has waived his claim that the trial judge should have recused herself. The trial court properly held that Appellant lacked standing to challenge the validity of the wills. As Appellant lacked standing, we decline to reach the merits of Appellant's last two issues. Accordingly, we affirm the trial court's grant of summary judgment.

---

[8] We nonetheless note that, as noted above, Appellant has waived his third issue on appeal. **See** note 6, **supra**. Furthermore, our disposition of Appellant's standing argument necessarily indicates that his fourth issue is meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016