J-A25007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF GENEVIEVE BUSH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: MARY BUSH | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 266 EDA 2025 |

Appeal from the Order Entered January 2, 2025
In the Court of Common Pleas of Chester County Orphans' Court at
No(s):  1521-1459

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:          **FILED MARCH 3, 2026**

Mary Bush ("Mary") appeals, pro se, from the order, entered in the Court of Common Pleas of Chester County, Orphans' Court Division, declaring invalid a will executed by Genevieve Bush, Deceased ("Mrs. Bush" or "Decedent"), on December 5, 2007 ("2007 Will"),[1] on the basis that Decedent lacked testamentary capacity and was subject to undue influence exercised by Mary. After careful consideration, we affirm.

The parties to this matter—all siblings—have been involved in contentious litigation concerning their mother, Decedent, for nearly 20 years.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although the order in question only addresses the 2007 Will, the Orphans' Court's accompanying memorandum also invalidates another will executed in 2006 ("2006 Will").

J-A25007-25

This Court previously summarized a relevant portion of this matter's history as follows:

> [S]ince the death of her husband, Fabian Bush, on June 25, 2004, the care of [Mrs.] Bush and her estate have been a matter of contention between her daughter, [Mary], and her three surviving sons, Appellees Michael, Joseph, and Justin Bush.[2] [Mary] systematically isolated Mrs. Bush from her sons and their families, prevented Appellees from entering [Mrs. Bush's home] and visiting Mrs. Bush, failed to inform them of Mrs. Bush's medical problems, posted signs disparaging them on Mrs. Bush's property, and otherwise kept Mrs. Bush away from Appellees. [Mary] further persuaded Mrs. Bush to transfer the family home to her for $10.00, and[,] thereafter[, to] pay for thousands of dollars of renovations out of the estate.
>
> On June 24, 2011, the [Orphans' Court] found Mrs. Bush to be an incapacitated person[] and appointed [Mary] and [Michael] as co-guardians of her person[3] and [Joseph] as guardian of the estate.

_____

[2] Justin Bush is not a party to the instant appeal.

[3] Despite Mary's behavior, the Orphans' Court found it appropriate to appoint her as co-guardian of the person, explaining its rationale as follows:

> Paradoxically, while the fragility of Mrs. Bush's emotional health has been largely exacerbated by Mary's manipulative behavior, Mary holds the key to the quality of Mrs. Bush's last years. As justified as it might seem to exclude Mary before more harm can be done, the reality is that Mrs. Bush is enmeshed with Mary, and a complete severance of that relationship could be disastrous. Even her brothers recognize that Mary deserves a place not only in their mother's life, but in their own. Their commitment to preserving family ties for their and their mother's benefit has persuaded me that both Joseph and Michael are well[-]suited to "assert the rights and best interests" of their mother as required by the statute.[13]
>
>> [13] Joseph testified that the brothers do not intend to prevent Mary from seeing Mrs. Bush. "[O]ur purpose is not to exclude Mary from our mother's life. Our purpose with this

*(Footnote Continued Next Page)*

- 2 -

[The June 24, 2011 order also declared void, due to undue influence exercised by Mary upon Mrs. Bush, a power of attorney executed by Mrs. Bush on January 19, 2006 ("2006 POA"), naming Mary as her agent.[4]  On August 5, 2011, the Orphans' Court entered an order, to which the parties stipulated, amending its June 24, 2011 order to include language voiding all transfers of assets made by Mrs. Bush to Mary, or by Mary acting as agent under the power of attorney, and directing the guardian of the estate to take appropriate measures to secure those assets for the benefit of Mrs. Bush's estate.  After the Orphans' Court denied Mary's exceptions, Mary] appealed[.  W]e affirmed[ on the basis of the Orphans' Court's thorough and well-reasoned June 24, 2011 opinion].  []**See In re Bush**, Nos. 2726 and 2746 EDA 2011, [] (Pa. Super. [filed June 11,] 2012) [(unpublished memorandum decision).]

[O]n June 8, 2012, the [Orphans' Court] ordered that Appellees, with twenty-four hours' notice to [Mary], be permitted to enter the property without [Mary] present, perform an inventory of the estate, and schedule visits with Mrs. Bush under supervision of a neutral third party.  The same day, as ordered, Appellees' attorney provided twenty-four-hour[s'] notice by email that they would visit the next day.

The following day, on June 9, 2012, [Mary] was present when Appellees arrived at Mrs. Bush's home[.  Mary] prevented them from going in the house, claimed she didn't have on-site email and [did not] receive notice until that afternoon (although she had

---

is to get Mary help and let us all have a healthy relationship with our mother, instead of the one that exists right now."  []N.T. [Hearing,] 5/27/10, at 85.[]

However, as Michael has somewhat greater flexibility of work and personal life, it will be his task to work with Mary on designing the next chapter in Mrs. Bush's life.  Accordingly, I appoint Michael [] and Mary [] as co-guardians of the person of [Mrs.] Bush.

Orphans' Court Opinion, 6/24/11, at 29-30.

[4] Joseph and Michael had also asked the Orphans' Court to declare void the 2006 and 2007 Wills.  However, because, at the time, Mrs. Bush was still alive and the Wills were still ambulatory, the court properly declined to rule on the issue.

- 3 -

been ordered to maintain a working phone line and email address), and then called the police when Appellees entered the basement to begin the property inventory. Appellees attempted to reschedule several times, but [Mary] insisted on choosing the "neutral" third party, scheduled appointments with Mrs. Bush so she would not be home during planned visits, and ultimately confessed at a hearing that Mrs. Bush had been hospitalized several times and would be having surgery that she had not told the other guardians about. The inventory and visits never took place as ordered.

On July 23, 2012, [Mary] filed a petition to remove [Michael] as co-guardian of the person. On August 8, 2012, [] Michael and Joseph [] filed a petition for contempt [against Mary] and, on August 31, 2012, they filed a petition to remove [Mary] as co-guardian of the person. On November 16, 2012, [Mary] filed a petition to remove [Joseph] as a guardian of the estate. The [Orphans' Court] consolidated the petitions into one hearing[] and[,] after six days of testimony, entered [] orders finding [Mary] in contempt, removing her as co-guardian [of the person, replacing her as co-guardian with Elizabeth Srinivasan, Esquire,] and ordering Mary to remove herself and her effects from [Mrs.] Bush's house. [Mary] timely filed separate appeals from the orders[.]

*In re Bush*, Nos. 1694, 1861, & 1863 EDA 2013, at **3-5 (Pa. Super. filed June 24, 2014) (unpublished memorandum decision). This Court affirmed the orders of the Orphans' Court.

There followed further litigation over the guardianship of Mrs. Bush. Attorney Srinivasan petitioned to withdraw as co-guardian of the person and Mary petitioned to remove Michael and Joseph as co-guardian of the person and guardian of the estate, respectively. Following a hearing, the court granted Attorney Srinivasan's petition to withdraw and Mary's petition to remove Michael as co-guardian of the person. The court denied Mary's petition

to remove Joseph as guardian of the estate.[5]  Finally, the court appointed Guardian Services of Pennsylvania as sole guardian of Mrs. Bush's person.

Mrs. Bush died on June 16, 2021.[6]  On June 23, 2021, Joseph and Michael (collectively, "Appellees") filed a caveat with the Register of Wills, averring that Mary intended to offer for probate the 2007 Will, which Appellees alleged was executed when Mrs. Bush lacked testamentary capacity and was procured by Mary through the exercise of undue influence.  The 2007 Will poured over into a Revocable Living Trust Agreement dated December 5, 2007 ("Trust"); upon Mrs. Bush's death, Mary became the sole trustee and beneficiary of the Trust.  Appellees sought to probate a photocopy of a will dated February 14, 2004 ("2004 Will"), which left Mrs. Bush's entire estate, upon the death of her husband, in equal shares to her four children.  The matter was certified to the Orphans' Court by the Register of Wills.  ***See*** 20 Pa.C.S.A. § 907 (Certification of records to court.)[7]

---

[5] Mary also asked the court to find that Michael and Joseph had committed perjury and were in contempt of court orders.  The court denied this request.

[6] This matter was initially presided over by the Honorable Katherine B.L. Platt until 2021, when the case was reassigned to the Honorable Bret M. Binder.

[7] Section 907 of the Probate, Estates and Fiduciaries Code provides, in relevant part, as follows:

> Whenever a caveat shall be filed or a dispute shall arise before the register concerning the probate of a will, the grant of letters[,] or the performance of any other function by the register, he may certify . . . the entire record to the court, which shall proceed to a determination of the issue in dispute.

*(Footnote Continued Next Page)*

The court held evidentiary hearings and the parties agreed to incorporate "prior testimony, proceedings, and court orders from the various matters between the parties, including the guardianship proceedings concerning [Mrs. Bush]." Orphans' Court Opinion, 12/31/24, at 3-4. On December 31, 2024, the Orphans' Court entered an order declaring the 2007 Will legally inoperative on the basis of testamentary incapacity and undue influence and directed that the 2004 Will be admitted to probate. Mary raises the following claims for our review:[8]

> [1.] Did the Orphans' Court err as a matter of law or abuse its discretion by relying on a 2011 guardianship opinion to retroactively invalidate the 2007 Will, despite unrefuted evidence that the guardianship proceedings remained ongoing, incomplete, and contested until 2021, in that the 2011 order and opinion post-dated the 2007 Will by four years, and that [D]ecedent[] was not present or afforded the statutory protections under 20 [Pa.C.S.A.] § 5511(a)?[9]

---

20 Pa.C.S.A. § 907.

[8] The Orphans' Court did not direct Mary to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

[9] Mary's disjointed, rambling, nearly incoherent argument as to this claim, inter alia, attempts to relitigate the 2011 guardianship proceedings, challenges the credentials of various doctors who have offered testimony in various proceedings, accuses attorneys of withholding evidence from Judge Platt, and references random medical appointments attended by Mrs. Bush. Mary presents no discernable, cogent argument, supported by relevant case law and citations to the certified record, that would enable us to perform meaningful appellate review of this claim. Accordingly, we find it waived. **See Lackner v. Glosser**, 892 A.2d 21 (Pa. Super. 2006) (arguments not appropriately developed are waived on appeal). Moreover, to the extent that
*(Footnote Continued Next Page)*

[2.] Did the Orphans' Court commit an error of law and abuse its discretion by failing to find that [Decedent] had testamentary capacity when executing the 2007 Will, despite uncontroverted evidence, including sworn testimony from the drafting attorney and treating physician, and over 800 pages of supporting documentation—demonstrating her sound mind and intent, and by instead relying improperly on a 2011 guardianship opinion, contrary to the legal standard that capacity must be assessed at the time of execution?

[3.] Did the Orphans' Court err as a matter of law or abuse its discretion by using the first guardianship opinion as evidence that [Decedent] was under undue influence by [Mary] when the evidence contradicts that the sons were aggressively pursuing [Decedent] for financial control over her?

[4.] Did the Orphans' Court err as a matter of law or abuse its discretion by admitting an unverified copy of the 2004 Will drafted by interested parties and executed under emotionally coercive circumstances while disregarding two later attorney-drafted [w]ills from 2006 and 2007, thereby violating the legal presumption that the most recent validly executed [w]ill reflects the [D]ecedent's true and final testamentary intent?[10]

Brief of Appellant, at i.

_____

Mary attempts to challenge the Orphans' Court's determination that Decedent lacked testamentary capacity, the argument garners her no relief. Even assuming, as Mary argues, that Decedent possessed testamentary capacity at the time she executed the wills in question, the "weakened mentality as relevant to undue influence need not amount to testamentary incapacity." *In re Estate of Byerley*, 284 A.3d 1225, 1237 (Pa. Super. 2022). Thus, Decedent's testamentary capacity is irrelevant where we affirm solely on the Orphans' Court's finding that Decedent was subject to Mary's undue influence at the time she executed the wills in question. *See* discussion, *infra*.

[10] Our review of the certified record in this matter reveals that Mary did not raise in the Orphans' Court any issue regarding the validity of the photocopy of the 2004 Will or the presumption of its revocation. Moreover, Mary's brief does not contain a statement pursuant to Pa.R.A.P. 2117(c), directing us to the place in the record where she raised or preserved the issue. Accordingly, this claim is waived. *See* Pa.R.A.P. 302(a) (issues not raised in trial court are waived and cannot be raised for first time on appeal).

Although this case was initiated as a caveat before the Register of Wills, it is, in substance, a will contest. It is well-settled that the appropriate scope and standard of review on appeal from a decree of the Orphans' Court adjudicating an appeal from probate is as follows:

> In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the [Orphans'] [C]ourt's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*In re Estate of Schumacher*, 133 A.3d 45, 49-50 (Pa. Super. 2016) (citation omitted). We "will not lightly find reversible error and will reverse an Orphans' Court decree only if the [O]rphans' [C]ourt applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record." *In re Jerome Markowitz Trust*, 71 A.3d 289, 298 (Pa. Super. 2013).

Mary raises four claims for our review; however, our resolution of her third claim is dispositive of the entire appeal. Mary claims that the Orphans' Court erred as a matter of law or abused its discretion in finding that the 2007 Will was the product of undue influence.[11] Mary argues that she was not in a

_____

[11] The phrasing of this issue in Mary's statement of questions involved suggests that she intended to raise an argument that the law of the case doctrine or collateral estoppel does not apply with respect to Judge Platt's 2011 finding that, as of 2006, Mrs. Bush was subject to undue influence by

*(Footnote Continued Next Page)*

confidential relationship with Decedent and there is "no credible evidence that Mary exercised control or dominion over her mother." Brief of Appellant, at 22. Mary concedes that she receives a substantial benefit under the 2007 Will, but argues that "this benefit reflects [Decedent's] intentional response to the misconduct of her sons, who attempted to control her finances and personal decisions following the death of her husband[.]" *Id.* Finally, Mary claims that there is "no evidence that [she] actively participated in procuring the will" and that her "role was passive, and the creation of the will was consistent with [Decedent's] independent desires." *Id.* She is entitled to no relief.

This Court has previously summarized the law pertaining to claims of undue influence as follows:

> "The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof." *In re Estate of Clark*, [] 334 A.2d 628, 632 ([Pa.] 1975). Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant. *Id.* The contestant must then establish, by clear and convincing evidence, a prima facie showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the

_____

Mary. However, Mary does not pursue that issue in the argument section of her brief pertaining to undue influence. Accordingly, the issue is waived. *See In re Estate of Anderson*, 317 A.3d 997, 1003 (Pa. Super. 2024) (issue identified on appeal but not developed in appellant's brief is abandoned and, therefore, waived).

proponent receives a substantial benefit from the will in question. *Id.* Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence. *Id.*

*In re Est. of Smaling*, 80 A.3d 485, 493 (Pa. Super. 2013) (footnote omitted).

. . .

In *Owens*[ *v. Mazzei*, 847 A.2d 700 (Pa. Super. 2004)], we observed:

Our Supreme Court has cautioned that weakened mentality as relevant to undue influence need not amount to testamentary incapacity. Consequently, the grantor's mental condition at the moment he authorized the transfer of his property is not as significant when reflecting upon undue influence as it is when reflecting upon testamentary capacity. [When the challenge is based on undue influence,] more credence and weight may be given to the contestant's remote medical testimony. Although our cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation. The Orphans' Court's mandate in assessing such evidence is relatively broad. If the court's decision rests upon legally competent and sufficient evidence, we will not revisit its conclusions. Under no circumstance will we substitute our judgment of credibility for that of the Orphans' Court.

[*Id.*] at 707 (citations [and quotation marks omitted]).

*In re Estate of Byerley*, 284 A.3d at 1237.

In her June 24, 2011 opinion, Judge Platt made the following findings in relation to Appellees' request to invalidate the 2006 POA on the basis of undue influence:

The evidence shows that Mary has been in a confidential relationship with Mrs. Bush since at least 2005. As stated above, after [her husband's] death, Mrs. Bush became completely

- 10 -

dependent on Mary for her daily needs. Mary made the decisions regarding Mrs. Bush's interaction with family members and friends, her meals, transportation, house repairs[,] and finances. [Mary] consciously isolated [Mrs. Bush] from her family, using threats of suicide to keep her mother in line.

> A confidential relationship exists when the circumstances make it certain that the parties did not deal on equal terms, but[,] on the one side there is an overmastering influence, or, on the other, weakness, dependence[,] or trust, justifiably reposed. It is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power. The clearest indication of a confidential relationship is that an individual has given power of attorney over her savings and finances to another party.

*In re Estate of Fritts*, 906 A.2d 601, 608 (Pa. Super. 2006) (citations omitted).

. . .

In the context of testamentary documents, an adjudication of mental [incapacity] near the date of execution of a will does not necessarily prove lack of testamentary capacity. *In re Estate of Vanoni*, 798 A.2d 203[, 207] (Pa. Super. 2002) [(citations omitted)]. Here, the same is true for the execution of a [POA]. Although [the scrivener] believed Mrs. Bush to be competent to execute the [POA], he never saw Mrs. Bush independent of Mary. He stated that Mary left the room while he spoke to Mrs. Bush but it was clear that Mary drove her mother to the meeting and brought her to [the scrivener's] office. Based on Mary's increasing control of Mrs. Bush since the time of [her husband's] death, it is likely that Mary told Mrs. Bush what to say to [the scrivener]. Without Mary's presence to prompt her, Mrs. Bush was unable to answer even the most basic questions at her deposition and [at] trial. I credit [the opinion of Bruce Mapes, Ph.D.] that Mrs. Bush was mentally impaired in 2006. I find that the 2006 [POA] was a result of Mary's overmastering influence on Mrs. Bush[; t]hus, [it] is void, ab initio.

Orphans' Court Opinion, 6/24/11, at 35-37 (reformatted; heading omitted).

Judge Platt's determination that Decedent was in a confidential relationship with Mary as of at least 2005 and suffered from a weakened intellect as of 2006 was affirmed on appeal by this Court, which incorporated Judge Platt's opinion in its analysis. ***See In re Bush***, 2726 EDA 2011 (Pa. Super. filed June 11, 2012) (unpublished memorandum decision).

In reaching his decision in the instant matter regarding the validity of the 2006 and 2007 Wills, Judge Binder not only considered Judge Platt's previously affirmed determination regarding undue influence, but also—pursuant to the agreement of the parties—took into consideration all prior proceedings, testimony, and orders in this longstanding dispute. Judge Binder also held multiple hearings. Having considered the testimony elicited at those hearings, as well as the Orphans' Court record dating back nearly fifteen years, Judge Binder concluded as follows:

> Here, there is no doubt that [Mrs. Bush] suffered from a weakened intellect from at least 2006 on. Moreover, there is no doubt that [Mrs. Bush] was in a confidential relationship with Mary at the time[,] upon whom [Mrs. Bush] was entirely dependent. Mary additionally prohibited or interfered with the ability of any of her siblings [to] assist[] or hav[e] a material relationship with [Mrs. Bush]. Lastly, the 2006 and 2007 Will[s] would leave all of [Mrs. Bush's] assets to Mary. Accordingly, the 2006 and 2007 Wills are invalid due to undue influence.

Orphans' Court Opinion, 12/31/24, at 11.

Upon review of the voluminous record in this matter, we conclude that the record fully supports Judge Binder's conclusion that the 2006 and 2007 Wills were the product of undue influence exercised by Mary upon Decedent.

- 12 -

We can discern no error of law, and the court's credibility determinations are supported in the record. *Markowitz Trust*, *supra*. Accordingly, we affirm.[12]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2026

_____

[12] Because we conclude that Judge Binder did not err in concluding that Decedent's 2006 and 2007 Wills were invalid as the product of undue influence, we need not address Mary's claim regarding the court's finding as to testamentary incapacity.